THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD CO. V.
SAMUEL T. HOWE, *as Treasurer of the State of Kansas.*

RAILROAD COMMISSIONERS; *Salaries and Expenses; Void Statute.* Section
four of chapter one hundred and twenty-four of the Laws of 1883, which
provides for raising a fund for the payment of the salaries and current
expenses of the board of railroad commissioners and its secretary, by the
taxation of the property of railroad companies only, is unconstitutional
and void, being in contravention of section one of article eleven of the
state constitution, which provides that "the legislature shall provide for
a uniform and equal rate of assessment and taxation." *

*Error from Shawnee District Court.*

THIS action was brought by plaintiff in error, to enjoin the
collection of the railroad commissioners tax. The questions

---

\* SECTION 4 of chapter 124, Laws of 1883, is as follows:

"SEC. 4. To provide a fund for the payment of the salaries and current expenses
of the board of commissioners and secretary, the board shall certify to the auditor of
state, on or before the 20th of May, in each year, the amount necessary to defray the
same; which amount shall be divided *pro rata* among the several railroad companies,
according to the assessed valuation of their property in the state, and the auditor shall
thereupon certify to the county clerk of each county the amount due from the several
railroad corporations located and operated in said county, and the county clerk shall
place the same on the tax-rolls of his county, to be collected the same as other taxes
upon railroad property; and the county treasurer shall account to the state for the
same as provided by law for the other state funds: *Provided*, That in unorganized
counties the amount so found due from railroad companies therein shall be included
in, and levied and collected with, such taxes as are levied and collected by the state
from railroad companies located in said unorganized counties."

Section 1 of article 11 of the constitution of Kansas is as follows:

"SECTION 1. The legislature shall provide for a uniform and equal rate of assess-
ment and taxation; but all property used exclusively for state, county, municipal,
literary, educational, scientific, religious, benevolent and charitable purposes, and per-
sonal property to the amount of at least two hundred dollars for each family, shall be
exempted from taxation."

By an act of the legislature of the State of New York, entitled "An act to create a
board of railroad commissioners, and to define and regulate its powers and duties,"
passed June 16, 1882, a board of railroad commissioners was required to be appointed
by the governor of that state, consisting of three persons, one of whom is to hold office
for three years, one for four and one for five. Sections 12 and 13 are as follows:

"SEC. 12. The annual salary of each commissioner shall be eight thousand dollars;
and of the chief clerk, or secretary, three thousand dollars; and of the marshal, fifteen
hundred dollars—payable quarterly out of the treasury of the state. The said board
shall also have power to employ such additional clerical force, not exceeding in number
three persons, however, at salaries not to exceed in the aggregate the sum of three thou-
sand dollars per annum, as they may find necessary for the purpose of preparing the
reports required by this act, and such other clerical duties as may be required of them
by said board. And such board of railroad commissioners may have the power to em-
ploy engineers, accountants, and other experts, whose services they may deem to be of
temporary importance in the conducting of any investigation herein provided. In the
discharge of the duties of their office, they shall be transported over the several railroads
in the state free of charge, upon passes signed by the secretary of state; they may em-
ploy and take with them experts or other agents whose services they may deem to be
temporarily of importance, and who shall also be transported, while on such duty, free
of charge, upon passes signed by the secretary of state; and they shall have procured
or them by the state, the necessary books, maps and statistics incidentally necessary

32  737
60  845
60  848

arise upon the demurrer filed by defendant in error to the amended complaint of plaintiff in error, and which is in substance as follows:

"The said plaintiff, the Atchison, Topeka & Santa Fé railroad company, complains of said defendant, and for cause of of action, says:

"*First:* That it is a railroad corporation duly created and existing under and by virtue of the laws of the territory and state of Kansas.

"*Second:* That it is now, and was at all times hereinafter mentioned, the owner of certain personal property situated in the unorganized counties of Finney and Hamilton, in the state of Kansas, to wit: A railroad consisting of track, road-bed, right-of-way, water and fuel stations, buildings, and the land on which they are situated and connected with its right-

for the discharge of the duties of their office; and they shall also have reimbursed to them quarterly the expenses and disbursements they may have incurred in traveling, and for the necessary travel expenses and disbursements of their clerks, marshal, and of experts; which expenses, however, shall not exceed in the aggregate five hundred dollars a month; and a statement of such expenditures in detail shall accompany the annual report. The salaries and expenses authorized by this act shall be audited and allowed by the comptroller, and paid in the first place by the state treasurer, upon the order of the comptroller, out of any unappropriated funds from time to time remaining in the treasury. The sum of fifty thousand dollars, or so much thereof as may be necessary, is hereby appropriated to carry out the provisions of this act.

"Sec. 13. The annual total expense of the said board of railroad commissioners, including salaries for commissioners' clerks and marshal, and additional clerical force, printing of additional copies of report, as provided by section eleven of this act, and all other expenses incident to said board, excepting only rent of office, shall not exceed the sum of fifty thousand dollars; and such expenses shall be borne by the several corporations owning or operating railroads according to their means, to be apportioned by the comptroller and state assessors, who, on or before the first day of July in each year, shall assess upon each of said corporations its just proportion of said expenses, one-half in proportion to its net income for the year next preceding that in which the assessment is made, and one-half in proportion to the length of main track or tracks on road; and such assessment shall be collected in the manner provided by law for the collection of taxes upon corporations." (Laws of New York, 1882, ch. 353, §§ 12, 13.)

The Laws of Massachusetts (1882) relating to railroad corporations and railroads, provide as follows:

"Sec. 9. There shall be a board of railroad commissioners, consisting of three competent persons. The governor, with the advice and consent of the council, shall, before the first day of July in each year, appoint a commissioner, to continue in office for the term of three years from said day; and if a vacancy happens, he shall in the same manner appoint a commissioner for the residue of the term, and may in the same manner remove any commissioner. Said board shall have a clerk, to be appointed by the governor, who shall keep a full and faithful record of its proceedings, and serve such notices as the commissioners may require. The commissioners and clerk shall be sworn before entering upon the discharge of their duties. *No person in the employment of or owning stock* in a railroad corporation shall hold either of said offices. No such commissioner or clerk shall personally, or through a partner or agent, render any professional service, or make or perform any business contract with or for a railroad corporation chartered under the laws *of this commonwealth,* excepting contracts made with them as common carriers, nor shall he directly or indirectly receive a commission, bonus, discount, present or reward from any such corporation.

"Sec. 10. The annual salary of the chairman of the board shall be four thousand dollars, that of the other commissioners three thousand five hundred dollars each, and that of their clerk two thousand dollars, payable quarterly from the treasury of the commonwealth. The commissioners shall be provided with an office in the state house, or in some other suitable place in the city of Boston, in which their records shall be kept. In the discharge of their official duties they shall be transported over the several railroads and railways in the commonwealth free of charge, and may employ and-

Statement of the Case.

of-way, machinery, rolling stock, telegraph lines, and all instruments connected therewith, material on hand and supplies provided for the purpose of operating said railroad, together with moneys, credits, and all other property used or held for the purpose of operating said railroad by such railroad company. That at the time required by law, in the year 1883, the board of railroad assessors of the state of Kansas appraised and assessed the property of plaintiff, so located in said unorganized counties of said state of Kansas as aforesaid, at the sum or value of seven hundred and eighty-nine thousand seven hundred and four dollars and seventy-nine cents, ($789,-704.79,) and duly returned the same through the auditor of state, as required by law; and said auditor of state placed the same upon the tax rolls for the year 1883, for the purpose of levying thereon all legal state taxes for said year.

"*Third:* That there are in the state of Kansas three ex-

---

take with them experts or other agents, whose services they deem to be temporarily of importance. The board may expend a sum not exceeding five hundred dollars annually in procuring necessary books, maps, statistics and stationery, and in defraying expenses incidental and necessary to the discharge of its duties, and a sum not exceeding two thousand dollars annually in defraying the compensation of an accountant, payable quarterly. A statement of such expenditures shall accompany its annual report.

"Sec. 11. The board may employ an accountant skilled in the methods of railroad accounting, who shall, under its direction, supervise the method by which the accounts of corporations operating railroads or street railways are kept.

"Sec. 12. The annual expenses of the board, including the salaries of the commissioners and clerk and the compensation of the accountant, shall be borne by the several corporations owning or operating railroads or street railways, according to their gross earnings by the transportation of persons and property, and shall be apportioned by the tax commissioner, who, on or before the first day of July in each year, shall assess upon each of said corporations its just proportion of such expenses, in proportion to its said earnings for the year next preceding that in which the assessment is made; and such assessments shall be collected in the manner provided by law for the collection of taxes upon corporations." ( Public Statutes of Mass. 1882, ch. 112, §§ 9, 10, 11, 12.)

Chapter 159 of the Revised Laws of Vermont (1880) relating to a railroad commissioner, provides as follows:

"Sec. 3490. The commissioner shall receive an annual salary of five hundred dollars, and his expenses while engaged in the duties of his office; and if he directly or indirectly receives pay for any service, or for neglect of service, other than is provided in this chapter, he shall be punished as provided in section 3296.

"Sec. 3491. The salary and expenses of the commissioner shall be allowed on proper vouchers by the auditor of accounts, and paid by the treasurer of the state, and the amount shall be equitably apportioned by the treasurer to the railroad companies according to the time employed by said commissioner, and the amount of expense by him incurred for them, severally, in discharge of his duties, and said proportional part shall be paid to said treasurer, on demand, for the benefit of the state by each of said railroad companies, their directors, or the persons in the actual direction and control of said roads." ( Revised Laws of Vt., 1880, ch. 159, §§ 3490, 3491.)

In 1881 Alabama passed an act to provide for the regulation of railroad companies and persons operating railroads in that state. It provides as follows:

"Sec. 13. *Be it further enacted,* That a commission is hereby established consisting of a president and two associate commissioners, to be known as the railroad commissioners of Alabama. It shall be the duty of the governor to nominate and send to the senate the names of three competent persons for the office of president, and of six competent persons for the offices of associate commissioners; and the senate shall select by a majority vote, from the persons thus nominated for said offices respectively, the president and two associate commissioners; but the senate may reject all the persons nominated for the offices of president and associate commissioners respectively; and in case of the rejection of the persons nominated for president, it shall be the duty of the governor to nominate three other persons for that office, from whom the senate shall select a presi-

press companies, one sleeping-car company, and other persons, companies and corporations doing business as common carriers in said state, in addition to those companies owning and operating railroads operated by steam, each of which said persons, companies and corporations have in said state a large amount of personal property subject to taxation under the laws of the state of Kansas.

"That, to provide a fund for the payment of salaries and current expenses of the board of railroad commissioners and secretary thereof, said board of railroad commissioners for the state of Kansas duly certified to the auditor of the state of Kansas, in the year 1883, the amount necessary to defray the same, which amount was divided *pro rata* among the several railroad companies according to the assessed valuation of their personal property in the state; and said auditor thereupon levied upon said property of defendant, situated in said unorganized counties, to be collected the same as other state taxes upon railroad property in unorganized counties,

dent; and in case the senate refuses to select from the persons nominated for the office of associate commissioner, either or both of the associate commissioners, the governor shall nominate three other persons for each of said offices not filled, from those first nominated, and from the persons thus nominated the senate shall make the selection; and such rejections and renominations may be made until all the offices have been filled."

"SEC. 17. *Be it further enacted*, That said commission shall have an office at the capitol, and shall meet there on the first Monday in every month except September, and shall remain in session until all business before them is disposed of; and shall hold other sessions, and at such times and places as may be necessary for the proper discharge of their duties, or as the convenience of parties, in the judgment of the commission, may require. The president of the commission shall receive a salary of thirty-five hundred dollars, and the associate commissioners shall each receive a salary of three thousand dollars per annum, to be paid as the salaries of other state officers, and the commissioners may appoint a clerk at a salary not exceeding fifteen hundred dollars per annum, to be paid in like manner. It shall be the duty of the commission to keep a record of all its proceedings, which shall be open at all times to the inspection of the public.

"SEC. 18. *Be it further enacted*, That it shall be the duty of every person, company or corporation operating any railroad in this state to make a return to the auditor at the time of returning its property for taxation in each year of the gross earnings of such railroad during the preceding year; and if such railroad is partly in another state, the gross proceeds shall be apportioned to each mile of main track on the whole road, and the sum thus apportioned to the miles of the main track of the whole road and the sum thus apportioned to the miles of main track in this state shall be considered the gross earnings of such railroad in this state. In the event of failure to make such return of gross earnings, the auditor shall ascertain and assess the same from information. The auditor must then ascertain what percentage on the aggregate of gross earnings thus returned or assessed will be sufficient to pay the expenses of the commission authorized by law, and assess a license tax against every such railroad for the amount of such percentage on its gross earnings. It shall be the duty of every person, company or corporation, operating a railroad in this state, to pay the tax so assessed to the treasurer of the state on or before the first day of June in each year. Upon production of the treasurer's receipt for such tax to the auditor, and upon satisfactory evidence that the party paying the same is prepared to transport freight and passengers with reasonable safety over such railroad, the auditor shall issue to such party a license to operate said railroad for one year. Any person, company or corporation operating a railroad in this state on or after the first day of June, 1881, without a license, shall forfeit one hundred dollars for each day while so engaged, one-half to be paid to any person suing for the same, and the other half into the state treasury.

"SEC. 19. *Be it further enacted*, That all money paid out under this act shall be paid on warrant of the auditor to the treasurer, as by law provided, including such sum as may be necessary to procure office furniture, stationery, and other office expenses, including rent of office of said commission: *Provided*, Such office expenses shall not exceed $500 per annum." (Acts of Alabama, 1880-81, No. 91, §§ 13, 17, 18, 19.)

—[REPORTER.

the sum of four hundred and seventy-three and eighty-two one-hundredths dollars ($473.82); no portion of said amount certified by said board of railroad commissioners being levied upon any property in the state of Kansas other than the personal property of railroad corporations owning or operating railroads operated by steam. And this plaintiff says that said tax so levied upon the property of plaintiff as aforesaid, is illegal, for the reason that the act under which said tax is levied, being an act entitled 'An act concerning railroads and other common carriers,' approved March 6, 1883, is unconstitutional and void in so far as it authorizes the levying of said tax upon said property of this plaintiff, in this, to wit: it is in contravention of sections 16 and 17 of article 2, and section 1 of article 11 of the constitution of Kansas, and in contravention to the fourteenth amendment to the constitution of the United States, and is illegal and void for the reason that said tax was levied only upon the personal property of railroad corporations owning and operating railroads operated by steam, and not upon any other of the taxable property situated within the state of Kansas, subject to the payment of said amount; and for said reasons the plaintiff has refused to pay said taxes or any portion thereof.

"That the said defendant, Samuel T. Howe, is now, and was at all the times herein complained of, the duly elected, qualified and acting treasurer of said state of Kansas; that, as said treasurer of said state of Kansas, the said defendant threatens to, and will issue a warrant under his hand, directed to some sheriff of said state of Kansas, commanding him to levy the amount of said unpaid taxes upon the plaintiff's personal property which remained due on the 1st day of January, 1884, and the penalties thereon, together with said sheriff's fees for collecting the same, and the goods and chattels of plaintiff, and to pay the same to said treasurer, and to return said warrant according to law, unless restrained from so doing by this honorable court.

"And plaintiff says that it is remediless at law.

"Wherefore, plaintiff prays that a temporary injunction be allowed, restraining said defendant, and his successors in office, from issuing any warrant against the goods and chattels of plaintiff for the collection of said taxes, or any portion thereof; and that upon a final hearing hereof said taxes may be adjudged illegal and void, and the said defendant, and his successors in office, be perpetually enjoined from collecting or attempting to collect the same, and for such other and further

relief as may be equitable and proper, and for costs of this action."

The demurrer was sustained by the district court, at the January Term, 1884, and judgment entered against plaintiff in error.

*A. A. Hurd*, and *Robert Dunlap*, for plaintiff in error; *Geo. W. McCrary*, general counsel:

1. A fair construction of § 4 of ch. 124 of the Laws of 1883, clearly shows that the tax was intended as a tax upon railroad property — that it is a *property tax*. That such was the intention of the legislature, there can be little doubt, for the language is plain. The whole amount is laid upon railroad property — the property of railroad corporations as assessed for taxation. It is to be placed on the tax rolls, and collected the same as other taxes upon railroad property; and in unorganized counties it is to be levied and collected the same as other taxes. It is made a charge upon the property, not a personal charge upon the corporation. (Comp. Laws 1881, p. 946, § 37.) The railway companies are merely designated to determine the property upon which the tax is to be levied as ascertained by the ownership thereof. In determining the nature of the tax, it must be ascertained upon what the burden is to rest. In *Cook v. Pennsylvania*, 97 U. S. 566, it was held that a tax laid by a state on the amount of sales of goods made by an auctioneer, is a tax on the goods so sold. It was pressed, as it has been in all such cases, that the tax was a tax on the occupation of the auctioneer, measured by the amount of sales. But Mr. Justice Miller, who delivered the opinion, with his usual clearness, saw where the burden would fall, and decided that it was a tax upon the property. In this opinion will be found a collection of the federal authorities upon this subject, which uniformly hold such a tax to be a property tax. In all the varied and ingenious attempts by the authorities of the state of New York to levy a tax upon the owners of vessels in proportion to the number of passengers, the supreme court, from the

*Passenger Cases* in 7 Howard to the case of *People v. Compag-nie Générale Trans-Atlantique,* in 107 U. S., has held such exactions to be a tax on passengers, and hence a regulation of commerce; in each case looking deeper than the surface or the pretense expressed in the act to see where the burden would really fall.

In the case of *Welton v. Missouri,* 91 U. S. 275, the court says:

"The license tax exacted by the state of Missouri from dealers in goods which are not the product or manufacture of the state, before they can be sold from place to place within the state, must be regarded as a tax upon such goods themselves."

The license tax in that case had been held by the supreme court of Missouri to be a tax on the calling. So in the case of *State Freight Tax,* 15 Wall. 232, it was argued that the tax was one on the business and franchises of the railroad companies which were required to pay it; but the court said that the inquiry was, upon what did the burden really rest, and not upon the question, from whom the state exacted payment into its treasury. The tax in that case was therefore held to be a tax on the goods. In addition to the cases cited by Mr. Justice Miller, in *Cook v. Pennsylvania,* see *State v. Endom,* 23 La. Ann. 663–4; *New Orleans v. Ins. Co.,* 23 id. 449; *Police Jury v. Nongues,* 11 id. 739; *Ins. Co. v. State,* 5 W. Va. 349; *Commonwealth v. Stodder,* 2 Cush. 572–3.

This proceeding can lead only to double taxation. This property has already borne its proportion of the burden, and it is now sought to place upon it an additional charge not placed upon any other property, or the property of any other class of owners. The rate of taxation on this property is necessarily raised above that generally charged on other property taxed, and consequently the constitutional principle of uniformity and equality in the rate of taxation is violated. (*National Bank v. Barber,* 24 Kas. 545; *Cummings v. National Bank,* 101 U. S. 153; *State v. Rld. Co.,* 40 Md. 22.)

2. The tax is not a license tax, nor a tax upon the business or occupation of the railroad companies. It is not a license

tax, because the act itself does not make it or intend it as such, nor does the act grant any license or privilege to be taxed.. No more is it a tax upon the business or occupation.. This tax is not levied upon railroad companies as a contribution of their proportionate share of the *general burden* — the *general* revenue of the state; but it is a tax exacting from only this class a revenue or fund for the purpose of maintaining a particular and newly-created branch of the state government. A special charge and burden not laid on any other class, is made to fall upon railroad companies solely. The act itself does not contemplate the imposition of a license or occupation tax. Had the act, in plain terms, and such object fallen fairly within the scope of the subject embraced in the title of this act, attempted to exact a license or occupation tax from railroad companies, such law would still be unconstitutional, because it would lack the essential element of uniformity — being laid upon the business of a railroad as a common carrier, and not laid upon those exercising the same business of common carriers, such as express companies, sleeping-car companies, and all other common carriers in the state.

A tax, however, levied upon the occupation or operations of plaintiff as a railway company, would be further objectionable because laid upon the operations of an agency of the federal government, the railroad company being the agency for the transportation of the mails and property of the United States. The distinction to be observed between a tax on the property which a state may levy, and a tax on the operations of an agent acting for the government and which the state cannot levy, is pointed out by Mr. Justice Strong, in *Railroad Company v. Peniston,* 18 Wall. 35. (See also *Osborn v. Bank,* 9 Wheat. 738; *Dobbins's Case,* 16 Pet. 435; *City of Carthage v. First National Bank,* 71 Mo. 508.) In *Dobbins's Case,* 16 Pet. 435, the tax held unconstitutional was laid by the state of Pennsylvania upon the office or occupation and emoluments of Dobbins, as captain in the United States revenue cutter service.

Now, it is a well-known fact, and indeed recognized by

the legislation of this state, (§§ 1, 3, pp. 778–9, Comp. Laws 1881, referring to the conditions of the congressional act of 1863,) that the A. T. & S. F. Rld. is one of the post-roads of the United States, used for the purpose of carrying mails, etc., of the federal government. Sec. 3, act of March 3, 1863, p. 773, 12 U. S. Stat. at Large, provides that the railroads, including plaintiff, and their branches, shall be and remain public highways for the use of the government of the United States *free from all toll and other charges* upon the transportation of any property or troops of the United States. Sec. 5, p. 774, same act, provides for the transportation of mails over said roads, under the direction of the post office department, and at *such price as congress might direct.* It may be argued, that plaintiff was not created by congress as an agency of the federal government. Neither was Captain Dobbins in the case heretofore cited. Plaintiff, like Captain Dobbins, was adopted as, and made the instrumentality for, carrying out the powers conferred on congress. It may also be argued, that plaintiff transacts other and private business besides that which it does as a post-road. So also did the bank of the United States. A tax cannot be placed upon the operations of the road, for, if this be conceded, it puts it in the power of the state, by taxation on the operations, to destroy this agency or prohibit it from performing its functions as a governmental agency. The carrying of the mails is an essential part of the business or occupation of plaintiff, and a tax cannot be laid upon the business of plaintiff without being laid directly upon and affecting the carrying of the United States mails, or the transportation of property or troops for the United States.

3. In whatever light, however, this tax may be viewed, whether as a property, or license, or occupation tax, it should still conform with the constitutional provisions of this state in regard to taxation, and, failing in this, is unconstitutional. The grant of the power of taxation in § 1, article 11, of the constitution, by the people to the legislature, a power which might have been granted to any other body, carries with it a

limitation, and is to be construed in the light of the other constitutional provisions, and of the fundamental principles which lie at the foundation of a free government, which are always taken for granted, and not expressed in the constitution, because they are of the very essence of such government. It does not vest an arbitrary power in the legislature. The material part of § 1, article 11, to be considered is:

"The legislature shall provide for a *uniform* and *equal rate* of assessment and taxation."

The taxation must be uniform and at an equal rate whenever and wherever it may be exercised. In the light of § 1 of art. 11 of the constitution, and of §§ 2 and 20 of the bill of rights, must the power of taxation be construed. For whatever purpose this great power of taxation is called into action, it is subject to the same rules and limitations. (See the leading case of the *The People v. Township Board*, 9 Am. Law Reg., N. S., 488; also *Ryerson v. Utley*, 16 Mich. 276.)

Even Chief Justice Black, who carried the doctrine of the almost absolute power of the state government over its subjects as far as any one, also concedes a limitation on the power of taxation. (See *Sharpless v. Mayor &c.*, 21 Pa. St. 168. See also *Sanborn v. Comm'rs*, 9 Minn. 273; *Oliver v. Washington Mills*, 11 Allen, 268; Cooley's Const. Lim., 5th ed., pp. 620, 621.)

Uniformity of taxation is defined by Bartley, C. J., in the leading case of *Exchange Bank v. Hines*, 3 Ohio St. On page 15 he says:

"Taxing is required to be by a uniform rule; that is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity, not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. *Uniformity in taxing implies equality in the burden of taxation;* and this equality of burden cannot exist without uniformity in the mode of the assessment, as well as in the rate of taxation. But this is not all. The uniformity must be coëxtensive with the territory to which it applies. If a state tax, it must be uniform over all the state; if a county, town or city tax, it must be uniform throughout the extent of the territory to which it is applicable. But the

uniformity in the rule does not stop here. It must be extended to all property subject to taxation, so that all property may be taxed alike, equally—which is taxing by a uniform rule."

(See also *City of Zanesville v. Richards*, 5 Ohio St. 590; *Howell v. Bristol*, 8 Bush, 493; *Lexington v. McQuillan's Heirs*, 9 Dana, 513–517; *Sutton's Heirs v. Louisville*, 5 id. 28–31; *City of Boston v. Shaw*, 1 Mctc. 130; Cooley's Const. Lim., 620, 621, 630, 631; Cooley on Taxation, 181, note; *Cummings v. Police Jury*, 9 La. Ann. 503.)

So also, wharfage charges were considered a tax, and it was held that the legislature had no power to impose such charges on certain parties and to exempt others. (*The People v. S. F. & A. Rld. Co.*, 35 Cal. 607; *French v. Teschmaker*, 24 id. 544.)

Now the cases of the improvement of streets and sewers, etc., are referable to the police power, which may impose duties and prescribe rules and regulations, and inflict penalties for violations thereof; and this is the basis of the decision in *Goddard, Petitioner*, 16 Pick. 504, in which Shaw, C. J., speaking of this power, says: "It imposes a duty upon a large class of persons, the performance of which requires some labor and expense, and therefore *indirectly* operates as a law creating a burden," etc. But to raise a revenue or fund to meet the expenses or charges of such improvements required to be made under such police regulation, the power of taxation is the only power which can be resorted to. (*Weeks v. City of Milwaukee*, 10 Wis. 257, and cases heretofore cited.) The police power cannot be exercised to raise a revenue or fund to defray expenses for public purposes.

The board of railroad commissioners, being created for the benefit of the public at large, (for it cannot be said that the railroad companies are in anywise benefited by this legislation,) having jurisdiction coëxtensive with the state, and required to hear complaints not by, but *against* common carriers, clearly and justly the expense should be paid out of the public revenue and by a *general* tax. If, as Judge Cooley says, the burden of paying the expenses of the legislature, or the

salaries of state officers, cannot be imposed on any single county, can such particular burden with any · more right be imposed upon a particular class arbitrarily selected? How can the charge of paying the salaries of these state officers, or the making up of this particular portion of the state funds, be imposed on railroad companies alone? Specific taxes are contrary to the provisions requiring uniformity, and unless there be some other constitutional provision, as in the case of street assessments by municipal corporations, a law authorizing their levy is void. (*Weeks v. Milwaukee*, 10 Wis. 257, ·et seq.; *Gilman v. City of Sheboygan*, 2 Black, 510–515, et seq.) A special tax levied on a selected class to raise a particular fund for a particular purpose violates the provision requiring uniformity. This is the case at bar.

It cannot be disputed that this tax is levied for the purpose of raising a revenue; although this revenue may be devoted to the discharge of particular state expenses. The fund to be raised becomes a part of the state revenue as much as a fund derived by general taxation, but set apart to meet a special charge or expense of the state. It is so considered in §4, where it is to be accounted for by the county treasurer, as provided by law, "for *other* state funds." The only object of a state revenue can be to supply a fund to carry on the machinery of government—to meet the public charges, such as salaries of officers, etc.

Inasmuch as this legislation against common carriers is for the benefit of the public at large, and the railroads are in no manner directly or indirectly benefited, but on the contrary are obliged to bear additional burdens without any possible chance of recompense or benefit, and the legislation and discrimination is leveled against them, so the burden of maintaining this board should be borne by the state at large, for it was created for the benefit of the public generally. It has been held that, to compel one to pay an amount beyond the particular advantage derived, where the public at large is benefited is, *pro tanto*, to take private property for public use without compensation, and hence unconstitutional. (*Tide*

*Water Co. v. Coster,* 18 N. J. Eq. 518; *State v. Fuller,* 39 N. J. L. 576 ; *Stuart v. Palmer,* 74 N. Y. 189; *Hammett v. Philadelphia,* 65 Pa. St. 146; *Washington Ave.,* 69 id. 352; *Louisville v. Rolling Mill Co.,* 3 Bush, 416–423; *Howell v. Bristol,* 8 id. 493. See also *Rld. Co. v. McHenry,* 24 Kas. 501 ; *Knowlton v. Supervisors,* 9 Wis. 410.)

4. The argument, we believe, will be made, and the tax attempted to be sustained, on the strength of the case of *Cincinnati Gaslight Company v. State,* 18 Ohio St. 237. But that case is clearly distinguishable from the one at bar. There the law was made concerning *all* gas companies, and *all* gas companies were required to contribute. Moreover, the amount was to be collected by suit, where the parties had a right to contest the amount and validity of the claim. Here the burden is not even imposed upon all the parties or classes proposed to be regulated. The act professes to regulate railroads *as* common carriers *only,* for the act is entitled "An act concerning railroads and *other* common carriers." Yet the burden was not placed on all common carriers which were to be regulated by the act, as did the Ohio case, where the burden was placed upon *all* the gas companies to be inspected. The whole amount of this burden is placed upon the single class, the railroad companies or corporations.

The arbitrary selection of a class, and the imposition of the whole burden upon it, is not warranted even under an exercise of the police power. ( *Goddard, Petitioner,* 16 Pick. 504. See also *Howell v. Bristol,* 8 Bush, 493; *Woodbridge v. City of Detroit,* 8 Mich. 308, *et seq.*)

But the tax of which we complain does not fall under the exercise of the police power, nor can it be looked upon as an inspection law, for it goes far beyond any such law. It is simply an exaction from a class to pay the expenses of a *quasi* legislative and judicial body to determine causes, and by the imposition of duties, and otherwise legislate against them. The railroad companies can in nowise be benefited by this legislation.

5. The tax is also void, as violating the spirit of the four-

teenth amendment to the constitution of the United States, which provides that no state "shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." (See *County of San Mateo v. Southern Pacific Rld. Co.*, 8 Sawyer, 238–302; Cooley's Const. Lim., 5th ed., 653; *County of Santa Clara v. Southern Pacific Rld. Co.*, 18 Fed. Rep. 385; *Missouri v. Lewis*, 101 U. S. 22; *Knowlton v. Supervisors*, 9 Wis. 410; *Gilman v. Sheboygan*, 2 Black, 515; *Ward v. Maryland*, 12 Wall. 430; *Howell v. Bristol*, 8 Bush, 493.)

Whatever the board shall choose to certify, or whatever amount it shall deem necessary to defray its expenses, or what it shall consider legitimate expenses, rests entirely, absolutely, and finally with it. No provision is made to contest the amount of the exaction, nor even for a hearing by those who shall bear the burden. In this connection, see *Stuart v. Palmer*, 74 N. Y. 183–188; *Ah Kow v. Noonan*, 5 Sawyer, 553; *Chinese Case*, 6 id. 349.

*W. A. Johnston,* attorney general, and *Edwin A. Austin,* for defendant in error:

The power of the legislature to regulate railroad corporations in the same manner and to the same extent as natural persons, cannot be seriously questioned. (Pierce on Railroads, 460; *Piek v. C. & N. W. Rld. Co.*, 94 U. S. 164, 176.)

The tax levied is to provide a fund for the payment of the salaries and expenses of the railroad commissioners. It is apportioned *pro rata* among the several railroad companies of the state. Regulation is the primary purpose of the law, and the tax imposed is limited to the exact amount of the expense of such regulation. Although it takes the form of taxation, and even is designated by that name, it is a mere police regulation. It is an exercise of the sovereign power of police rather than of the sovereign power of taxation. The difference between taxation and regulation is very clearly stated in Cooley on Taxation, on page 396, *et seq.*

The police of railroads, in the absence of legislative control,

is exercised by the corporations themselves, over their opera-
tives, and to some extent over all who do business with them
or come on their grounds. But according to the maxim, *Sic
utere tuo ut alienum non lœdas*, which is of universal applica-
tion, it must of course be within the range of legislative action
at any time to define the mode and manner in which the rail-
road companies may so use their roads as not to injure others;
and if the business of railroads is especially dangerous, they
may be required to bear the expense of erecting such safe-
guards as will render it safe to others; and if governmental
supervision of the business of railroads is necessary to protect
the people from unjust, unreasonable and extortionate charges
and discriminations, they may be required to bear the expense
of the supervision which operates as a safeguard to the rights
of others. A leading case on this subject, as to the power to
subject persons and property to all kinds of restraints and
burdens in order to secure the general comfort, health and
prosperity of the state, is *Thorpe v. Rutland & Burlington Rld.
Co.*, 27 Vt. 140. The question in that case was concerning
the right of the legislature to require all railways to fence
their roads upon both sides, and provide cattle-guards *at their
own expense.* The general obligation to make and maintain
fences along the roads is on the land-owners, but the railroad
companies are almost universally required to bear the expense
of maintaining fences and like safeguards.

(See also *Nelson v. Vt. C. Rld. Co.*, 26 Vt. 717; *O. & M.
Rld. Co. v. McClellan*, 25 Ill. 140; *Norris v. Androscoggin
Rld. Co.*, 39 Me. 273; *Wilder v. Maine Central*, 65 id. 332;
*Penna. Rld Co. v. Reblet*, 66 Pa. St. 164; *Snydan v. Moore*, 3
Barb. 358; Pierce on Railroads, 460–468; Cooley's Const.
Lim. 706–726.)

Other illustrations of the exercise of this police power to
regulate and impose regulations, burdens, and taxes, arise un-
der the inspection laws.

In Illinois, the "Railroad and Warehouse Commission" has
the supervision and control of warehouses and the inspection
of grain, in addition to the duties imposed on it in reference

to railroad corporations. The commission is empowered "to fix the rate of charges for the inspection of grain, and the manner in which the same shall be collected," etc.

In *The People v. Harper*, 91 Ill. 357, the supreme court of the state sustained the constitutionality of these inspection fees.

In Ohio, the general assembly of the state created the office of inspector of gas meters and illuminating gas; and to provide for the payment of the salary of the officer and of the expenses for the procurement of the apparatus necessary for the discharge of his duties, the several gas companies in the state were directed to be assessed, and to pay into the state treasury the amount of such salary and expenses, proportioned among them according "to their appraised valuation as declared in the returns required by the general statutes of the state." The case of *The Cincinnati Gas Light and Coke Co. v. The State*, 18 Ohio St. 237, was an action brought by the state against the gas company, to recover the amount assessed against such company, and which the company refused to pay, challenging the law as unconstitutional. Judge Brinkerhoff delivered the unanimous opinion of the court, declaring the law constitutional.

The statute books contain innumerable laws by which, under the general police power of the state, police regulations and burdens are imposed, entailing expense on the owners and possessors of property peculiarly located or peculiarly dangerous. (See Cooley on Taxation, 416, *et seq.*) Of this nature are statutes requiring railroad corporations to make reports, to number their cars, to fix and post rates, to disuse steam in cities, to ring a bell and blow a whistle at road-crossings, and to station flagmen at such crossings, to build fences, cattle-guards, and culverts. (See Pierce on Railroads, pages 462 and 463, and cases cited.)

The expense of the regulation under the law in question in this case is divided *pro rata* among the several railroad companies, according to the assessed valuation of their property, and the collection of "the amount due from the several rail-

road companies" is to be made in the same manner and through the same agencies as other taxes upon railroad property. But the fact that the same standard is adopted which is used in other taxation, does not change the character of the tax. Because a regulation tax is apportioned in the same manner as a property tax, it does not therefore cease to be a regulation tax. The principles which justify the apportionment of property tax according to the assessed valuation of property, justify the apportionment of this regulation burden. Any rule of graduation which is reasonable and just may be adopted. The method in which such taxes for regulation should. be imposed is in the legislative discretion. ( *City of Newton v. Atchison,* 31 Kas. 151; Cooley on Taxation, 175, 177, 179, and note.)

In conclusion of this part of our argument, therefore, it is claimed :

1. That the burden imposed by the law in question, though designated as a tax, is an exercise of the sovereign power of police, rather than of the sovereign power of taxation.

2. That under the sovereign power of police, the legislature, in its discretion, may control and regulate corporations as well as natural persons, and subject them to all kinds of burdens and impositions in order to secure the general comfort, health, and prosperity of the state.

3. The demand is made for the purpose of providing a fund to pay the expense of a reasonable regulation and safeguard to the rights of the public. It is for the purpose of regulation, and limited to the expense of such regulation.

4. That the manner of the apportionment of the charge and the means provided for its collection do not change its character.

If the power to tax *any subject* is not *excluded* by the terms of the constitution, it must exist in the legislature, to be exercised as the wisdom and discretion of that body may direct. ( *Commonwealth v. Moon,* 25 Gratt. 951.)

Every possible presumption and intendment will be made in favor of the constitutionality of the act in question, and the courts will only interfere in cases of clear and unquestioned

48—32 KAS.

violation of the fundamental law. (Sedgwick on Construction of Statutory and Constitutional Law, 409 ; *Francis, Treas., v. Rld. Co.,* 19 Kas. 311.)

The principal constitutional objection urged against this law is, that it is in contravention of §1, article 11, of the constitution. Two other sections of the constitution are pointed out, but they are not seriously urged, and are not argued. The section relied on, which provides that "the legislature shall provide a uniform and equal rate of taxation," has repeatedly been before the supreme court of this state for construction, and the decided cases are unanimous in holding that this clause of our constitution applies alone to direct property taxes for revenue, and not to taxes for purposes of regulation or restriction. (*Hines v. City of Leavenworth,* 3 Kas. 186; *City of Leavenworth v. Booth,* 15 id. 627; *Fretwell v. City of Troy,* 18 id. 271 ; *Comm'rs of Ottawa Co. v. Nelson,* 19 id. 240 ; *Francis, Treas., v. A. T. & S. F. Rld. Co.,* 19 id. 311; *City of Newton v. Atchison,* 31 id. 151; Burroughs on Taxation, 67, 147.)

In *Hines v. City of Leavenworth,* 3 Kas. 197, the court says :

"Article 11 of our constitution relates exclusively to finance and taxation ; the title of the article is 'Finance and Taxation.' Ordinary and extraordinary *revenues* must be raised in accordance with its provisions. The financial polity of the state must be regulated with reference to its requirements."

And local assessments upon adjacent city lots for the cost of street improvement were held not to be within its limitations.

In *Booth v. City of Leavenworth,* 15 Kas. 628, a city ordinance levying a license tax on foreign insurance companies was held not to be in conflict with §1, article 11, of the constitution, and the difference between a license tax and an ordinary property tax, pointed out.

In *Fretwell v. City of Troy,* 18 Kas. 271, a license tax, though designed for revenue rather than for regulation, was upheld — the court holding that there was no special restriction in the constitution upon the power to tax employments.

In *Comm'rs of Ottawa Co. v. Nelson*, 19 Kas. 243, the court says:

"The fact is, that the constitution only requires that all ordinary and usual assessments and taxation shall be imposed at a 'uniform and equal *rate;*' and all extraordinary and uncommon kinds of assessment and taxation are left to be regulated by law, in the same manner as the same would be regulated by law if said constitutional provision did not exist."

In *City of Newton v. Atchison*, supra, the court, in passing on an occupation tax, says:

"There is no inhibition, expressed or implied, in our constitution, on the power of the legislature to levy and collect license taxes, or to delegate like power to municipal corporations. It is not pretended that there is any express inhibition. It has been contended that section 1, article 11, creates an implied inhibition, and that because it reads that 'the legislature shall provide for a uniform and equal rate of assessment and taxation.' But that section obviously refers to property, and not to license tax."

(See pp. 155–6, of the opinion, and the numerous cases cited.)

In the same case Judge VALENTINE, in a specially concurring opinion, says:

"It seems to me that all taxes whose primary object is revenue should be levied in accordance with said section 1, article 11, of the constitution, while all taxes imposed for the purpose of regulation or restriction, or possibly prohibition, may be levied as license taxes."

In *Francis, Treas., v. Rld. Co.*, 19 Kas. 311, in passing on the law levying a tax on railroad property in unorganized counties, the court says:

"The tax before us is not in form a license tax, but in substance and practical effect is very like it. It is a tax on property in one employment and a tax graduated to the amount of such property belonging respectively to the various parties engaged in such employment."

(See Cooley on Taxation, 42, 384; Burroughs on Taxation, 146.)

From the foregoing it is clear that the section of the state

constitution relied upon by the railroad company, is inapplicable as an objection to the burden imposed by this law.    That section is applicable alone to direct property taxes for purposes of revenue.    All other taxes are not subject to its restrictions. License taxes, occupation taxes, privilege taxes, and all special, uncommon, and extraordinary taxes, although levied for purposes of revenue, are not controlled by its provisions.    While a police regulation tax to pay the expense of a necessary and reasonable regulation, such as the present one undoubtedly is, is not an exercise of the power of taxation at all, but an exercise of the power of police, and subject to the only requirement, that it should be reasonable and fair.    The legislature may pass any such police regulation as in its sound discretion seems reasonable and just, and the exercise of this legislative discretion cannot be controlled by the courts.

The objection that the charge, or tax, is in contravention of the fourteenth amendment of the constitution of the United States, does not, in our judgment, require serious argument to refute.    That amendment does not deprive the states of the power to enact local regulations for the purposes of internal government under the general police power of the states. (*Slaughter-House Cases,* 16 Wall. 36; *Munn v. Illinois,* 94 U. S. 113; *Rld. Co. v. Iowa,* 94 id. 155; Cooley's Const. Lim. 13, note.)

The objection that the tax is unwarranted, because laid upon the operations of an agency of the federal government, is untenable, even if it is considered as a tax.    (*Thomson v. Pacific Railroad,* 9 Wall. 579; *Rld. Co. v. Peniston,* 18 id. 5.)

Considered as a police regulation, it is clearly within the jurisdiction of the state government to exact it.

The railroad company further complains, that the entire expense of the regulation is assessed against the railroad companies, and that the other common carriers are exempted from contributing to the common burden.

The answer is, that exemptions from taxation, beyond those named in the constitution, are not inhibited by the constitution; and under the general grant of legislative authority, the

legislature has power to make other and larger exemptions. The constitution does not require that *all* property shall be subjected to the taxes within § 1, article 11. ( *Commissioners of Ottawa Co. v. Nelson,* 19 Kas. 237; *Francis, Treas., v. Rld. Co.,* 19 id. 311; Cooley's Const. Lim. 637; Burroughs on Taxation, 132; Comp. Laws 1879, ch. 107, § 30.)

The legislature may create new taxing districts. It may classify for purposes of taxation or license, and when the classification in its nature is not arbitrary, but just and fair, there can be no constitutional objection to it. ( *Phœnix Ins. Co. v. Welch,* 29 Kas. 678; *People v. Coleman,* 4 Cal. 46; Cooley on Taxation, 385.)

Property taxed for revenue may also be subjected to a license tax. An assessment upon the value of property has no necessary connection with a license to carry on the business in which the same property may be used. ( *St. Louis v. Bircher,* 7 Mo. App. 169; *Am. Union Ex. Co. v. St. Joseph,* 66 Mo. 675.)

Duplicate taxation is understood as a requirement that any person or any subject of taxation shall directly contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once. ( *City of Newton v. Atchison,* 31 Kas. 151; Cooley on Taxation, 168.)

The legislature may have had sufficient reasons for not imposing a like tax on express companies and sleeping-car companies. It is a well-known fact that these companies operate over the railroads almost exclusively. The railroad companies over whose lines of road these special carriers operate, are held liable for the taxes assessed against them. An apportionment of a part of the burden or expense of this regulation to such sleeping-car and express companies would not relieve the railroad companies of any liability. (Comp. Laws 1879, ch. 107. § 30.)

In levying a license tax, or a regulation tax, or a privilege tax, or any tax other than a direct property tax for purposes of general revenue, there being no constitutional restrictions, the legislature has full and complete power over the subject, and may place the burden where, in its sound wisdom and

discretion, it ought to be. The classification ought to be reasonable and fair, but where the law is within the legislative authority, the courts cannot control the legislative discretion. (Cooley on Taxation, 384–5; Burroughs on Taxation, 3, 146, 147; *Comm'rs v. Moon*, 25 Gratt. 951.)

*A. A. Hurd, Robert Dunlap,* and *Geo. W. McCrary,* general counsel, for plaintiff in error, in reply:

Counsel for defendant in error attempt to uphold the discriminating and unequal exaction or tax of which we complain, as a legitimate exercise of the police power. Counsel, in substance, concede that if it is a tax it cannot be upheld, and attempt to change the plain meaning of the statutory words, calling it a tax. In this controversy it is not necessary to question the decision in the case of *Thorpe v. Rutland & Burlington Rld. Co.,* 27 Vt. 140, or the analogous cases cited by our opponents. In those cases a duty was imposed upon the railroads in respect to their property, to render it safe for the protection of the public. They were required to fence their road, and if they failed they were rendered liable for damages suffered by reason thereof, as in the nature of a penalty for such neglect. While there may have been a legitimate exercise of the police power in these cases, these decisions do not touch the point in controversy. Nor is there any applicability in the decision in the case of *The People v. Harper,* 91 Ill. 357, also cited. In that case suit was brought on the bond of the inspector for a misappropriation of the fees he had collected.

What might otherwise be an inspection fee may, from the manner in which it is exacted, lose the essential characteristic of a fee, and become a mere exaction or appropriation of the property of one individual for the benefit of another. For if we adopt the view that such fees are imposed as compensation for services rendered, *presumably* beneficial to the party upon whom they are imposed, then the same presumption must extend to all other parties in the same situation. If the presumption is that railroad companies are benefited by the

regulation of the commissioners, then the same presumption must be extended to all the other common carriers regulated by the same law. If the burden is to be imposed on the theory of presumed benefits, then it should be apportioned among all the parties presumably benefited. If this is not done, then you require one class to pay for the benefits which inure to another class in the same situation; and in other words, to the extent that the amount which the second should pay is imposed upon the first class, and such class is required to pay, you *pro tanto* take or appropriate the property of such first class for the use of such second class. This certainly the legislature has no authority to do. This would be taking private property for private use, for the appropriation would be the same whether the exaction were required in money or in lands.

On the other hand, if it is contended that the excess over and above the benefit flowing to the first class, and which should be borne by the second class on the theory of presumed benefit, is not exacted for the private use of the second class, then it must follow that the excess is appropriated for the use or benefit of the public at large, which is also prohibited; for to the extent that it must exceed the presumed benefit, to such extent is there a want of compensation for money thus exacted for the use of the public. It would be as invalid as a law which would authorize the taking of the land of an individual upon making compensation for only one-half the value of such land. This position is borne out by the authorities cited in our former brief. So that, it seems to us, where the whole expense is charged upon a few individuals for services rendered not only to themselves but also to a large class of others, the exaction loses the essential characteristic of an inspection fee, and can only be supported on the theory that there exists the right in the legislature to appropriate the property of one man for the benefit or use of another without compensation, or of the sovereign right of eminent domain. This arbitrary exaction is not an exercise of the police power, but rather, if anything, an exercise of the right of eminent domain. The police power has been well defined by Judge

Cooley, in his work on Constitutional Limitations, 5th ed., pp. 706–7–8. The definition as given by Chief Justice Shaw, and cited on pages 707 and 708, limits the power to prescribing reasonable restraints and regulations upon the enjoyment of property rights, prescribing duties with penalties or without for their violation, not repugnant to the constitution, and distinguishable from the right of eminent domain. This view was adopted by Judge Christiancy in the case of *Woodbridge v. The City of Detroit,* 8 Mich. 308–9–10.

In examining the laws of other states regulating railroads, we find no precedent for this unequal exaction.

In Tennessee, railroads only are regulated, and the expenses are borne wholly by the state. (Acts of Tenn., 1883, p. 276, §§ 15 and 16.)

The same is true in Wisconsin. (Rev. Stat. Wis., 1878, p. 525, § 1797.)

Also in Ohio. (Laws of Ohio, vol. 64, p. 111, § 3.)

Also in Rhode Island. (Pub. Stat. 1882, p. 729.)

Also in Michigan. (Howell's Annot. Stat. Mich., 1882, vol. 1, p. 825, §§ 3289, 3290.)

Also in Minnesota. (Stat. of Minn., 1878, p. 94, § 68.)

Also in Illinois. (Rev. Stat. Ill., p. 829, § 132.)

Also in Missouri. (Stat. Mo., 1879, vol. 1, § 846.)

Also in California. (Stat. of Cal., 1880, p. 46, § 2, and p. 49, § 15.)

In New Hampshire the commissioner receives three dollars for each day actually employed, and the fees and expenses of any survey or assessment of damages are to be paid by the railroad whose interests are in question. (Gen. Stat. New Hamp., 1878, p. 375, §§ 10, 11.)

In Maine the commissioner is paid five dollars per day while actually employed, to be paid by the railroad on which the services are rendered. (Acts of Maine, 1879, p. 133.)

In Vermont it is equitably apportioned among the railroads severally, according to the time employed and expenses incurred for them.

In Alabama the auditor ascertains what per cent. is neces-

sary on the gross earnings to pay expenses of the commission, and he assesses a license tax against every railroad for the amount of such percentage on its gross earnings; and upon payment of the tax a license is issued to operate the railroad for one year. Operation of the railroad without such license is subject to a penalty. (Acts of Alabama, 1880, 1881, p. 90, § 18.)

In all the other states where such laws have been enacted, there is some attempt made to apportion the expenses among all the subjects regulated, usually according to the amount of business done as ascertained by the gross earnings. But nowhere is the attempt made to assess the whole charge upon a limited class.

The section of the statute in question of which we complain, is without precedent in legislation. It is unjust and confiscatory in its nature. It dwarfs the railway commission and commissioners from the dignity of state officers, as contemplated by other provisions of the commission law, and makes the tribunal and the men the mere recipients of bounty exacted by high-handed power from the railway companies.

The opinion of the court was delivered by

HURD, J.: On the 6th day of March, 1883, the legislature passed an act entitled "An act concerning railroads and other common carriers," by the second section of which, "a board of railroad commissioners," consisting of three competent persons, was created, and by the fifth section, "the general supervision of all railroads in the state, operated by steam, and all express companies, sleeping-car companies, and all other persons, companies or corporations doing business as common carriers in this state," was given to such board. Section three of the act fixes the salaries of the commissioners and secretary, and directs the same "to be paid as the salaries of other state officers."

Section four of the act is as follows:

"SEC. 4. To provide a fund for the payment of the salaries and current expenses of the board of commissioners and secretary, the board shall certify to the auditor of state, on or before the

20th of May, in each year, the amount necessary to defray the same; which amount shall be divided *pro rata* among the several railroad companies, according to the assessed valuation of their property in the state, and the auditor shall thereupon certify to the county clerk of each county the amount due from the several railroad corporations located and operated in said county, and the county clerk shall place the same on the tax rolls of his county to be collected the same as other taxes upon railroad property; and the county treasurer shall account to the state for the same as provided by law for the other state funds: *Provided,* That in unorganized counties the amount so found due from railroad companies therein shall be included in, and levied and collected with, such taxes as are levied and collected by the state from railroad companies located in said unorganized counties."

For the purposes of assessment and taxation, railroad property is referred to in the concluding part of section 27, article 7, ch. 107, Comp. Laws of 1879, as follows:

"The board, when properly organized as herein provided for, shall proceed to ascertain all the personal property of any railway company owning, operating or constructing a railway in this state, which, for the purposes of assessment and taxation, shall be held to include the track, road-bed, right-of-way, water and fuel stations, buildings and land on which they are situated adjacent to or connected with the right-of-way, machinery, rolling stock, telegraph lines and all instruments connected therewith, material on hand and supplies provided for operating and carrying on the business of such railroad, together with the moneys, credits, and all other property of such railway company used or held for the purpose of operating its railroad by such railway company, and appraise and assess such property as personal property at its actual value in money."

The amount necessary "to provide a fund for the payment of the salaries and current expenses of the board of commissioners, and secretary," in and for the year 1883, was ascertained by the auditor of state, and by him divided *pro rata* among the several railroad companies *according to the assessed valuation of their property* in the state; and pursuant to the statute mentioned, a tax was levied in each of the counties through which such railroads passed, upon the amount of the assessment in such county, for the payment of the same.    The

property of the plaintiff in the unorganized counties of Finney and Hamilton was assessed at seven hundred and eighty-nine thousand seven hundred and four dollars and seventy-nine cents, and for the purposes aforesaid a tax was levied on this assessment in the sum of $473.82.   The plaintiff refused payment of this tax, and the defendant threatening to enforce its payment by issuing the warrant provided for by § 37 of article 7, ch. 107, Comp. Laws of 1879, commenced this suit in the district court of Shawnee county, to enjoin the defendant from issuing such warrant for the collection of such tax.   The defendant demurred to the petition, on the ground that it does not state facts sufficient to constitute a cause of. action.   The court below sustained the demurrer, and entered judgment against the plaintiff for costs.   The ·plaintiff brings the case to this court for review.

Under the statutes, (Comp. Laws 1879, ch. 107,) all of the property ·of railroad companies within the state (except real estate not used or necessary to be used for the convenient or daily operation of the road) for the purposes of assessment and taxation, is considered personal property, and the valuation and assessment are made· by a board consisting of certain state officers, and the amount of the assessment is apportioned among the counties through which a road passes in the proportion which the whole length of such road in each county bears to the whole length of said road; and upon such assessment the annual taxes for state, county and other purposes are levied, in organized counties by the board of county commissioners and collected by the treasurer of the counties, and in unorganized counties by the auditor of state and collected· by the state treasurer, and the state taxes so levied and collected form in part the general revenue of the state, and such taxes may be enforced by the sale of property.

The state has created this board of railroad commissioners, and invested the commissioners with certain powers of the state, and placed under their charge portions of the property of the state, and compensates them from the state treasury in the same manner and from the same funds that other. state

officers are compensated. For the purpose of reimbursing the treasury for the moneys appropriated for the salaries of the commissioners and secretary, and the expenses of the board, section 4, ch. 124, Laws of 1883, provides that the amount required shall be certified to the auditor of state, " which amount shall be divided *pro rata* among the several railroad companies according to the assessed valuation of their property in the state." This apportionment is upon the assessment made for the purposes of taxation of the property of railroad companies under section 27, *supra*.

All of the legal machinery of the state for the assessment of railroad property and the levy and collection of taxes thereon for state purposes, is employed in the levy and collection of these taxes, except that the amount to be collected in each county is fixed by the auditor of state. In the statute under consideration the legislature has designated the levy or exaction as a tax, and the act making the appropriation for the payment of their salaries, (sec. 57, ch. 23, Laws of 1883,) designates them as taxes levied upon the railroad companies.

We think that the taxation provided for in the fourth section of chapter 124 of the Laws of 1883, is a tax upon one class or species of property, to be collected from property in the same manner as taxes on personal property are collectible within the state, and that the section aforesaid authorizing the levy and collection of such taxes is in conflict with § 1 of article 11 of the constitution, providing for a uniform and equal rate of taxation, and is void, and that the taxes complained of are null and void. It is evident that the legislature regarded this tax as a property tax, and not as a license or an inspection tax, because the tax is not assessed upon all the companies, corporations and persons subject to be regulated by the provisions of the statute. (Laws of 1883, ch. 124, § 5.)

The judgment of the district court will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.