## COLUMBIA & GREENVILLE R. R. COMPANY v. GIBBES, TREASURER.

1. An act of the legislature will not be declared unconstitutional unless it is clearly so.

2. The State may grant a charter to a corporation upon such terms as she pleases, and the conditions so imposed become binding on the corporation upon an acceptance of the charter. The State may grant a franchise conferring vested rights beyond future legislative control, but to have such effect it must be clear, explicit, and unconditional.

3. Where a railroad company holding a charter that was, in express terms, not liable to amendment, was sold out under orders of the court, and the purchasers formed a new corporation under a general law permitting it in such cases, with all the rights, immunities, &c., possessed by the old corporation previous to the sale under its charter, and amendments thereto, and of other laws of the State, the new corporation became subject to all laws on the statute book, applicable to railroads, at the date of their organization.

4. Where an act created a railroad commission and provided that the

expenses thereof should be borne by the several railroads of the State according to their gross income, this statute became a part of the charter of every railroad company thereafter incorporated, and assessments for this purpose annually included in the several tax acts were not successive amendments of those charters, but merely a provision to carry into execution a law already enacted.

5. An exaction of a yearly contribution laid by the legislature upon a railroad corporation is not unconstitutional where the corporation accepted its charter subject to such an exaction.

6. This case distinguished from *Railroad Company* v. *Howe*, 32 *Kan.*, 737.

MR. JUSTICE MCIVER *dissenting.*

7. Where a corporation claims that its vested rights are impinged by a law on the statute book, the burden is upon the corporation to show that its charter antedated the statute.

8. This court cannot, even with the consent of parties, authoritatively determine general propositions not involving points fairly arising upon the record of the case.

9. Petition for rehearing refused, no important fact or principle having been overlooked.

Before WITHERSPOON, J., Richland, April, 1885.

The opinion fully states the case.   Upon the points considered by the court, the arguments were as follows :

*Mr. C. R. Miles,* attorney general, for appellant.

The amount paid by the plaintiff corporation to the county treasurer, and which this action is brought to recover, was a liability to the State, imposed by an amendment of its charter, as a condition upon which it shall exercise its corporate franchise of operating a railroad within the State, accepted by it; and was therefore not illegally or wrongfully collected; and the plaintiff cannot maintain an action to recover it.   *Gen. Stat.*, §§ 1416, 1453; 18 *Stat.*, 810.   The Columbia and Greenville Railroad Company was established in 188  , and chartered under the provision of the general law, "to enable the purchasers of railroads to form corporations, and to exercise corporate powers, and to define their rights, powers, and privileges," approved March 24, 1876 (16 *Stat.*, 160), and is therefore expressly subject to the liabilities and provisions contained in the "general railroad law"

of the State, which, if inconsistent with its said charter, are to be taken as in alteration and amendment thereof. As to the inherent power of the State to subject corporations chartered by it to such new regulations as may, from time to time, be considered necessary for protection and safety of the public, without thereby violating the contract created by the charter, see *Cooley Cons. Lim.*, 576.

The constitution of 1868, art. XII., sec. 1, declares that "corporations may be formed under general laws; but all such laws may from time to time be altered or repealed." Section 5 of the same article declares that "the legislature shall regulate the public use of all franchises, and limit all tolls, imposts, and other charges and demands under such laws." The provisions of the act of December 17, 1841, are incorporated in section 1361 of General Statutes, which declares that "it shall be deemed a part of the charter of every corporation created under the provisions of any general law, and of every charter granted, renewed, or amended by act or joint resolution of the general assembly (unless such act or joint resolution shall in express terms declare the contrary), that such charter and every amendment thereof shall always remain subject to amendment, alteration, or repeal by the general assembly." This section was construed by the Supreme Court of the United States in the case of *Hoge* v. *Railroad Co.*, 99 *U. S.*, 348.

The legislature having created railroad commissioners, and made it their duty to exercise a "general supervision of all railroads in the State operated by steam, and to examine the same, and keep themselves informed as to their condition and the manner in which they are operated with reference to the security and accommodation of the public and the compliance of the several corporations with the provisions of their charters and the laws of the State;" and having declared that all the provisions of the general law on this subject shall apply to all railroads, and to the corporations or others owning or operating the same (*Gen. Stat.*, § 1455), has required that the entire expenses of the said railroad commissioners in performing these duties, shall be borne by the several corporations owning or operating railroads within the State; and has made these several provisions a part of the char-.

ter of every corporation operating a railroad within the State over which it possesses the power of control.

Now, do not these several provisions of the general railroad law, made part of the charters of the plaintiff railroad corporation, "prescribe the way in which it shall exercise its corporate powers"? Do they not "require the compliance with these provisions as a condition upon which the corporation shall exercise the privileges granted it;" and having been accepted by the corporation, may they not be "exacted, not because the legislature had a right to impose them, but because the corporation has agreed, as one of the conditions of its being, to assume them as matter of contract and for value"? Is the plaintiff entitled to recover back, as illegally and wrongfully collected from it, the amount which it has paid in discharge of its liability to the State imposed by these provisions of law, which it has accepted by acting under its charter? A constitutional provision designed solely for the protection of the property rights of a citizen may be reviewed. *Cooley Con. Lim.*, 185. *Sedg. Stat. and Con. Law*, 111.

*Mr. J. C. Haskell*, contra.

Is section 1453 an amendment of the charter of the railroad company? The answer to this claim is, I think, readily found by an examination of section 1361, General Statutes of South Carolina, which provides that "all charters and amendments, or renewals thereof, shall always remain subject to amendment or repeal or alteration by the general assembly." Now, if this gives the power to exact additional taxes to those which others bear, it means that the legislature has reserved to itself the right to confiscate; for if it can exact one extra dollar, it can exact all, and take the entire property of a corporation without compensation or process of law, in direct violation of article I., section 23, of the constitution of South Carolina. If it can amend or repeal as it will, it can act judicially and declare forfeited a charter, and so, by violating section 26, article I., of the constitution, it destroys or takes at will private property and that of corporations without process of law or that adequate compensation imperatively required by the constitution. It may be answered that corporations take their charters in full view of the reserved power

of the legislature; but the legislature cannot reserve a power which it never possessed, nor even by the consent of a party assume a power prohibited by the constitution.

. None will question that the forfeiture of a charter is a judicial act, or that the legislature is forbidden by the constitution to act judicially. No one will contend as an abstract proposition that the legislature can by act take private property or that of a corporation; and no one will deny that uncontrolled extra taxation is *pro tanto* confiscation. The fact that the amount is small does not affect the principle one particle, for there is no limit once the right is established, save the uncontrolled and fickle whims of each new legislature, and what to-day is comparatively a trifle may to-morrow be an overwhelming burden, breaking down and destroying both the rights of the owners and the security of creditors, who extended the credit in full view of ordinary taxes, but with no thought or possible foresight of extraordinary taxes, which, if unpaid, will take the whole of the property which is their security. They can, it may be said, protect themselves by paying the taxes. So they can, and must, as to ordinary taxes; but once let them become liable for extraordinary taxes, and their liability is practically unlimited, and the securities on which they have relied may at any time become worthless by reason of those arbitrary burdens which no prudence could foresee and against which they have the right to expect full protection from the law.

The question then may arise, What can the legislature do under section 1361? And the answer is, *it can act as it will in all special rights conferred by the charter where such action does not conflict with the constitution,* and no consent of the corporation can extend or amplify its powers as to points covered by the constitution. The acceptance of the charter subject to section 1361 only estops the corporation from claiming that the special and extraordinary corporate rights granted by the charter are matters of contract and not special grants which are subject to modification by the very terms of the act granting them. But section 1361 cannot, nor can any other legislative act, take from a corporation the right to the protection of the constitution; and whenever an act of the legislature infringes upon constitutional

rights, whether of an artificial or of a natural person, such act is *pro tanto* absolutely null and void.    When a corporation is created, the act, says Kent, clothes bodies of men with the qualities and capacities of one single being.    "The object of incorporation is to bestow the character and properties of individuality. upon a collective and constantly changing body of men."  *Providence Bank* v. *Billings*, 4 *Pet.*, 561.

Once let a corporation be formed and it at once by the mere act of its creation acquires the rights and powers of natural persons, except as limited by the act of its creation.    The act which creates a corporation prescribes usually the way in which it shall exercise its corporate powers, but at the same time it invests it *ipso facto* with personal rights and obligations.    The first the legislature can under section 1361 amend; the second it can only alter in such matters as are not controlled by the constitution; and any act which in its direct effect impairs a constitutional right or immunity is as unwarranted as one which directly takes it away.    In the exercise of its corporate powers, a corporation acts under a special grant.    In its rights, obligations, and immunities as an artificial person, it acts and exists under the general law of the land.    The first, being special powers, can be affected by special act; the last only by an act of equal force with the constitution itself.

Section 1453 is no amendment of the charter—it does not claim to be so—and imposes no additional duties on it for the protection of the public; it simply takes from it so much of its property, without process of law, and in violation of the constitution.    The power given to the legislature by article XII., section 5, of the Constitution, and reserved by section 1361, General Statutes, refers only to the special corporate powers of the company, and is no sanction of any act touching those rights which are personal and which are protected by the constitution.

December 5, 1885.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN.    The Columbia & Greenville Railroad Company, in paying their taxes to the defendant as treasurer of Richland County for the year 1884, paid, among others, an

item of $1,061.40, being the proportion of the expenses of the railroad commission of the State, assessed upon the said corporation by the comptroller general, and charged up against said corporation as directed by the appropriation act, approved December 24, 1884, which provides that, "For the salaries of the railroad commissioners, six thousand three hundred dollars ; for the clerk of the railroad commissioners, twelve hundred dollars ; for rent of office, if so much be necessary, four hundred dollars ; and three hundred and fifty dollars to pay the contingent expenses of the office for the year 1885, if so much be necessary; to be advanced by the State, until the same shall have been collected from the railroad companies of the State, in- the manner prescribed by law, and when collected the same shall be replaced in the State treasury," &c.

The item aforesaid was paid under protest, and this action was brought under the "act to facilitate the collection of taxes" (incorporated in the General Statutes as section 268), to recover back the sum so paid, on the ground "that the act, by virtue of which it was claimed and collected, is unconstitutional, null, and void, and said collection was wrongful and illegal." The defendant, Gibbes, as treasurer, answered, denying that the law under which the said item was assessed against and collected from the said corporation, is unconstitutional and void, or that the same was illegally and wrongfully collected.

The cause came on for trial before Judge Witherspoon, and the defendant made requests to charge as follows :

I. "That the presumption is in favor of the constitutionality of the acts of the legislature of the State, and the burden is upon the plaintiff to show beyond a reasonable doubt that they are unconstitutional.

II. "That the amount collected from the plaintiff, a corporation operating a railroad within this State, as its just proportion of the expenses of the railroad commission, having been apportioned upon its gross income proportioned to the number of miles in this State, if regarded as a tax, is not a tax upon property, but upon 'an occupation' or business, and being regulated according to the amount of business done as ascertained by its gross income, and being uniform and equal in its operation

upon all of that class without discrimination, was lawfully assessed and collected.

III. "That the amount collected from the plaintiff, a corporation operating a railroad within this State, being its proportion of the expenses necessarily incurred in the enforcement of the laws enacted by the State for the inspecting and regulating of the business carried on by the plaintiff for the safety and protection of the public and of the individual citizens of the State, was lawfully assessed and collected, under the police power of the State.

IV. "That the provisions of the general railroad law of the State, under and by virtue of which the amount was collected from the plaintiff, are part of the charter of said company, and the plaintiff cannot maintain this action to recover back the amount paid by it.

V. "That he should instruct the jury to find a verdict for the defendant."

The judge reports that "after hearing counsel for the plaintiff and attorney general for the defendant, I must conclude that the assessment made and the amount collected from plaintiff under section 1453 of the General Statutes is the imposition of an extra or additional tax, illegal and unjust, and in violation of the provisions of the constitution, above cited (sections 23 and 36, of article I., and also section 1, article IX.). This assessment is referred to as a tax, and the same means are provided for enforcing and collecting it as provided for collecting other taxes for the State," &c. Under this charge of the judge there was a verdict for the plaintiff for the amount claimed, and the defendant appeals to this court upon the ground of error in the charge.

The action was brought under section 268 of the General Statutes, to recover back "a tax wrongfully collected under protest," and cannot be sustained, unless it appears that the exaction complained of was unconstitutional. The appropriation was made in accordance with the act of 1879, "to create a railroad commissioner for the State of South Carolina and to define his duties" (16 *Statutes*, 789, and now section 1453 of the *General Statutes*), which, among other things, provides that "the entire expenses of the railroad commissioner, including all salaries

and expenses of every kind, shall be borne by the several corporations owning or operating railroads within this State, according to their gross income proportioned to the number of miles in this State, to be apportioned by the comptroller general of the State, who, on or before the first day of October in each and every year, shall assess upon each of said corporations its just proportion of such expenses, in proportion to its said gross income for the current year ending on the thirteenth day of June next preceding that on which the said assessment is made; and the said assessment shall be charged up against the said corporations respectively, under the order and direction of the comptroller, and shall be collected by the several county treasurers, in the manner provided by law for the collection of taxes from such corporations, and shall be paid by the said treasurers as collected into the treasury of the State, in like manner as other taxes collected by them for the State," &c.

The assessment was made by the appropriation act in accordance with this law. It is manifest that the provision requiring the State to advance the expenses and to be reimbursed by the railroad companies, was merely an arrangement of convenience, being substantially a requirement that the railroad companies of the State should pay the expenses of the railroad commission. The single question, therefore, is whether the aforesaid act of 1879, under and by authority of which the appropriation was made, is binding on the plaintiff corporation, or is wholly null and void as being unconstitutional. As we have several times had occasion to repeat: "It is an axiom in American jurisprudence that a statute is not to be pronounced void on this ground, unless the repugnancy to the constitution be clear and the conclusion that it exists inevitable. Every doubt is to be resolved in favor of the enactment. The particular clause of the constitution must be specified and the act admit of no reasonable construction in harmony with its meaning. The judicial function involving such result is one of delicacy and to be exercised always with caution. *Township* v. *Talcott*, 10 *Wall.*, 673." *Pelzer, Rodgers & Co.* v. *Campbell & Co.*, 15 *S. C.*, 593.

The argument at the bar was able and took a wide range, embracing the questions, whether the exaction complained of, was

merely an assessment imposing the expenses upon a railroad company for its own supervision and regulation, as it is sometimes required to bear the expenses of erecting and maintaining fences, enclosing their own right of way, and other like safeguards; or whether it was a technical tax for revenue, and if the latter, whether it was a tax on "an occupation" or a tax on property, and as such in conflict with section 1 of article IX. of the Constitution, requiring all taxes on property to be uniform; and also in conflict with sections 23 and 36 of the Bill of Rights, which require all property taxed to be taxed in proportion to its value, and denounce the taking of private property for public uses without the consent of the owner or a just compensation being made therefor. But it will be observed, that all these questions rest upon the view of prior vested rights as in an individual, and that they cannot arise in reference to a corporation, unless such rights have been already secured to it, by the law giving it existence. It seems to us, therefore, that there is a question lying further back as to whether the plaintiff corporation had any vested right, of which the exaction complained of was an infringement.

All corporations are artificial bodies, merely creatures of the State; and as the State may or may not call them into existence, so she may limit their existence and mould and form them in precise accordance with her view of what is right or politic. A corporation, therefore, is purely statutory. It has no physical existence, and its legal entity being invisible, its powers, duties, obligations, and immunities must be looked for alone in the laws which create it. In most essential matters, the terms upon which the franchise is granted appear in the charter and constitute a contract between the State and the corporations, which is under the protection of the provision in the constitution forbidding the passage of a law impairing the obligation of contracts. But inasmuch as the State, one of the contracting parties, has the power of legislation and is charged with exercising that power for the welfare of her citizens, a very nice question often arises as to how far and in what particulars, she may amend a charter which she had previously granted. Without, however, going into that matter now, we merely say that, although the State has the gen-

eral power of legislation, she may grant a franchise in such manner as to confer vested rights and to exclude herself from afterwards abridging them by legislation.   But for reasons most obvious, such grant, to have the effect of excluding legislation by the State, must be clear, explicit, and unconditional.   If the State, in creating a corporation, expressly reserves to herself the right in future to amend the charter generally or in any particular indicated, and such charter is accepted, that corporation may not afterwards object to the exercise of that reserved power, subject to which the charter was accepted, thereby making it a part of the fundamental contract.  See *Big. Estop.*, 515, and authorities.

What, then, was the contract of the State as contained in the charter of the plaintiff corporation ?   In order to determine this, it will be necessary to ascertain the terms of the charter, interpreted in the light of the time and circumstances under which it was granted.   The pleadings in the case are short, merely making the constitutional question, without undertaking to set out with particularity the date or terms of the plaintiff's charter.   It is not stated in the complaint that the plaintiff, "The Columbia and Greenville Railroad Company," is a corporation under the laws of the State, but the answer admitted that the plaintiff was such corporation, without, however, stating when and where it became such.   There is on the statute book no act expressly chartering such company, and it must therefore have become a corporation under the general law of 1876, to which more particular reference will be hereafter made.   The proceedings by which the plaintiff secured its charter are not set out in the case, but it was stated at the bar, and as we understand conceded, that they took place in the year 1880 ; but whether it was so conceded or not, it was not made to appear that it was at an earlier day, and, as we conceive, it was incumbent upon the plaintiff to show that it had corporate existence at the time of the passage of the act, which it claims to be unconstitutional.

The old "Greenville and Columbia Railroad Company" was chartered as far back as 1849, and, as the charter shows, was originally exempt from the provisions of section 41 of the act of 1841 (now section 1361 of the General Statutes), which declares that "every charter of incorporation granted, renewed, or modi-

fied, shall at all times remain subject to amendment, alteration, or repeal by the legislature." But the old company afterwards (1869) consented, for a consideration, that their charter should be so amended as to make its property subject to taxation in conformity to section 2, article 12, of the Constitution of 1868, which declares that "the property of corporations now existing or hereafter created shall be subject to taxation except in cases otherwise provided for in this constitution." While its franchises and immunities were in this state and condition, the old company became involved, and the road was sold under orders of the court. At that sale it was purchased by certain persons, who formed a new company in the name of the "Columbia and Greenville Railroad Company," under the "act to enable-purchasers of railroads to form corporations and to exercise corporate powers, and to define their rights, powers, and privileges," approved March 24, 1876 (16 *Stat.*, 160, and now part of the general railroad law as sections 1420, 1, 2, 3, and 4 of the General Statutes).

That act provides "that in case of the sale of any railroad * * * by virtue of any mortgage or deed of trust, whether under foreclosure or other judicial proceedings, * * * the purchaser or purchasers thereof, or his or their survivors, representatives, or assigns, may, together with their associates (if any), form a corporation for the purpose of owning, possessing, maintaining, and operating such railroad * * * by filing in the office of the secretary of State of this State, &c. Such corporation shall possess all the powers, rights, immunities, privileges, and franchises in respect to such railroad, or the part thereof included in such certificate, and in respect to the real and personal property appertaining to the same, which were possessed or enjoyed by the corporation which owned or held such railroad previous to such sale under and by virtue of its charter and any amendments thereto, and of other laws of this State," &c. The charter granted to the new company under the provisions of this act could confer no other franchises and immunities than those which were possessed at the time of the sale by the old Greenville & Columbia Railroad Company, and contained no negation whatever of the power of the State to legislate upon the subject; and therefore it is clear, indeed it seemed to be assumed in the

argument, that the charter of the new company was taken subject to the law now embraced in section 1361 of the General Statutes, making it "at all times subject to amendment, · alteration, or repeal, by the legislature."

But it is strongly urged upon us that the exaction complained of, being an assessment in the appropriation act of successive years for so much money, to pay the expenses of the railroad commission, cannot, in any proper sense, be termed an amendment, or successive amendments, of the charter of the plaintiff corporation; but, on the contrary, is an extra tax annually imposed, and as such, is in conflict with the provisions of the constitution before referred to. From the view which the court takes it will not be necessary to determine the precise character of the exaction assailed. The appropriation act which required its payment made no independent original levy, but was merely an assessment to carry out in execution the actual provisions of the general law of 1879, now section 1453 of the General Statutes, which required all the railroad companies of the State to pay the expenses of the railroad commission. Where objection is made to the specific appropriation of the year 1884, the question is thrown back upon the general act of 1879. If that act is binding upon the plaintiff corporation, it cannot object to the clause in the appropriation act of 1884, which was a mere specification under the general authority previously given. It may be that the general law of 1879 cannot be considered as an amendment of the charter of plaintiffs, for the very conclusive reason that it was in existence at the time the charter was granted; but, as it seems to us, it was more than an amendment—it was a part of the charter itself, or at least one of the conditions upon which the charter was granted and accepted.

The plaintiff corporation is undoubtedly bound by all the provisions of the act under which it was created, one of which was that it should have only the rights, franchises, and immunities which were possessed by the old Greenville & Columbia Railroad Company at the time of the sale "under and by virtue of its charter, or any amendments thereto, and of other laws of this State." As we understand it, this was an express contract that the charter was accepted subject to all the laws then of force

applicable to railroads.    On November 22, 1880, when the secretary of State certified that the purchasers of the Greenville Railroad had formed a new corporation under the laws of the State, there was on the statute book of the State a general law, part of what is called the general railroad law of the State, declaring that every railroad company of the State should contribute its just proportion towards the payment of the expenses of the railroad commission then in existence.    Under these circumstances, the charter to the plaintiff corporation was granted by the State, without any reference whatever to the aforesaid liability declared by law; and as the intention of parties must concur to constitute a contract, we are not at liberty to assume that the State intended to grant, or did grant, to the plaintiff any vested rights inconsistent with her own law then on the statute book.    The purchasers who became corporators had notice of that law.    They accepted the charter in full view of a public act of which all are bound to take notice, and it thereby became a condition of the charter—in a certain sense, a part of the contract—and they cannot afterwards be heard to object to the enforcement of that law.    "In general, one who accepts the terms of a contract must accept the same *in toto*; he cannot accept part and disclaim the rest."    *Big. Estop.*, 514.

But it is said that the exaction is in itself unconstitutional, and, being such, the legislature could not assume a power prohibited by the constitution even with the consent of the parties concerned.    We have endeavored to show that whether an exaction by the State upon a corporation is or is not constitutional must depend upon the character of the rights with which the State has endowed the corporation.    If it has been invested with no rights of which the exaction would be an infringement, we do not clearly see how it could be called unconstitutional, any more than the provision in most railroad charters that the company shall at its own expense erect fences, cattle-guards, &c.

If the State were now to create a railroad corporation and insert in the charter *in totidem verbis*, the provision requiring that it should pay its just proportion of the expenses of the railroad commission, and the corporators should accept that charter and put the road into operation, we suppose there can be no

doubt that they would be bound by all the provisions of the contract, and would not be heard to say that the one in reference to the payment of the expenses of the railroad commissioners was unconstitutional and void. In *Hand* v. *Savannah and Charleston R. R. Co.* (12 *S. C.*, 314), the court held that a certain act of the legislature purporting to postpone a particular class of bonds was unconstitutional; but at the same time it was held that those who had by their conduct assented to the act were estopped from denying its validity as to them. In the judgment of the court the doctrine is announced in the following terms: "It is too clear for argument or the citation of authorities that one taking a provision made for himself by a statute must take upon the conditions upon which it was offered. The principle equally applies to express conditions, and such as may be fairly implied from the terms of the statute," &c.

No case upon the precise point under consideration has been brought to our attention; that of *The Atcheson, Topeka & Santa Fe R. R. Co.* v. *Howe, as treasurer of the State of Kansas* (32 *Kans.*, 737) is in no way inconsistent with the principles herein announced. The State of Kansas passed an act concerning railroads and other common carriers, and charged the expenses of the commission established, not upon all common carriers which were to be regulated by the act, but only on railroad companies, and therefore it was held that as a tax the exaction was unconstitutional, as not being uniform. In delivering the judgment of the court, Mr. Justice Hurd said: "It is evident that the legislature regarded this tax as a property tax, and not as a license or an inspection tax, because the tax is not assessed upon all the companies, corporations, and persons subject to be regulated by the provisions of the statute," &c.

It seems that the States which have created railroad commissions to inspect and regulate railroads differ as to the manner of providing for the payment of the expenses. Tennessee, Wisconsin, Ohio, Rhode Island, Michigan, Minnesota, Illinois, Missouri, and California each defrays the expenses of its commission directly out of the public treasury; while in New Hampshire, Maine, Vermont, Alabama, and perhaps other States, different

methods are adopted to apportion the expenses among the railroads regulated.

The judgment of this court is that the judgment of the Circuit Court be reversed and the complaint dismissed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER. I dissent, but owing to the pressure of other official duties, I cannot now undertake to give the reasons why I am unable to concur in the conclusion reached by the majority of the court.

A petition was filed by defendant asking for a rehearing, upon which the following order was passed December 16, 1885:

PER CURIAM. We have carefully read this petition for a rehearing. All the points made were considered before the opinion was filed, in which it was stated as follows: "The proceedings by which the plaintiff secured its charter are not set out in the case, but it was stated at the bar, and as we understand conceded, that they took place in the year 1880; but whether it was so conceded or not, it was not made to appear that it was at an earlier day, and, as we conceive, it was incumbent on the plaintiff to show that it had corporate existence at the time of the passage of the act which it claims to be unconstitutional," &c. In the view which the court took it was wholly immaterial whether such concession was made or not, for it was incumbent on the plaintiff corporation to show that its charter antedated the "act to create a railroad commissioner for the State of South Carolina and to define his duties," &c. Until that appeared, no case was made sufficient to raise the general question of the unconstitutionality of that act.

The question was necessarily limited to the corporation making it. This court cannot, even by the consent of parties, authoritatively determine general propositions. As was said in one of our cases: "The court does not sit for the purpose of determining mere abstract questions of law, but to determine whether the law, as applicable to a particular case, has been correctly stated," &c. The single question made in the pleadings was whether the

exaction upon the Columbia and Greenville Railroad Company was wrongfully and illegally collected because the act by virtue of which it was collected was unconstitutional and void. That was the only "point fairly arising upon the record of the case," and it was considered and decided. No important fact or principle having been overlooked, there is no ground for a rehearing. The petition is dismissed.