THE STATE OF KANSAS *ex rel.* THE ATTORNEY GENERAL *v.* THE BOARD OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, *Respondents.*

*Motion for writ of Mandamus.*

State or Territorial taxes are imposed upon the people of the State or Territory, and the individuals upon whose property the tax is imposed, or who are personally required to pay it, are alone debtors for taxes.

The duties imposed upon county officers in the collection of State taxes are imposed upon the *officers*, not the counties, and for the benefit of the *State*, not of the counties. *Laches* in non-collection of such taxes, is imputable, not to counties, but to the State.

The Territorial tax of three mills on the dollar imposed under the law of 1860, was on the then taxable property, and the poll tax against the then taxable individuals of the Territory. The act of Feb. 26, 1863, to "require certain counties to levy, collect and pay over delinquent Territorial taxes," attempts to impose the aggregate of the uncollected taxes upon the property taxable within the delinquent counties according to the assessment of 1863,—and was not an attempt to collect the old tax—*held* that it was the *levying* of a tax within the meaning of the provisions of Sec. 4 of Art. 11 of the Constitution.

The Act of Feb. 26, 1863, failing to "distinctly state the object of the same" within the meaning of Art. 11, Sec. 4, of the Constitution, and not providing "for a uniform and equal rate of assessment and taxation" within the meaning of Art. 11, Sec. 1, *held* to be void.

A motion for a writ of Mandamus, to compel the Board of County Commissioners of Leavenworth County to levy with the taxes of 1863 an additional sum of $21,131.24 of unpaid Territorial taxes, under Chap. 63 of the Laws of 1863, *denied.*

The facts of the case appear in the opinion of the Court.

The case was argued by *E. V. Banks* for relator, and by *Robert Crozier* and *F. P. Fitzwilliams* for respondents.

*W. W. Guthrie,* Attorney General, and *E. V. Banks,* for the State, submitted:

The writ of mandamus will issue to compel inferior tribunals and public officers to perform positive duties, upon their refusal so to do.

The expiration of the time within which a duty is to be performed by public officers without performance, is a refusal to perform.

The Commissioners of certain counties, including those of Leavenworth County, are required by Act of 1863 to levy and collect, along with the other taxes for A. D. 1863, a certain tax sufficient for a certain purpose.

This purpose is declared, and the duty becomes fixed when the Auditor's notice has been given.

This notice has been duly given, and the Commissioners have failed to perform, they being required to do so 3d Tuesday in August.    *Act* 1863, *page* 102, *Sec.* 14.

The Territorial Legislature as a necessary incident of the powers conferred by the Organic act had a legal right to provide a necessary government, and for the collection of the necessary revenue to support the same, *in such manner as it should see fit to enact,* and when such provisions had been made, *no power but Congress could question.* Legislative expenses, Auditor, Treasurer, School Superintendent, were decided necessary, and revenue to meet such expenses, was ordered from time to time.

To raise such revenue it is provided by Act of 1858, page 379, that the Treasurer shall charge against the several counties the tax apportioned thereto.

The right to " apportion and to charge " against a county an amount, necessarily imposes upon such county the obligation to pay.

And further, no provision of law having ever existed empowering the Territory to enforce the collection of taxes from individuals, but ample power existing in the counties, the duty of raising the amount charged against a county devolves upon that county alone.

The Act of 1860, (for instance), page 176, provides the per cent. that is required to be raised upon the taxable property of the Territory for Territorial revenue.

The term "levied" as there used, means the determination of the amount of revenue necessary to be raised,— nothing more.

By Act of 1860, page 43, Sec. 15, the County Court are required "to apportion and order the levying of taxes as provided by law." This duty extends to all taxes which the county is required to provide for the collection of, and of course includes the Territorial revenue, since the county alone is authorized to perform this act.

The amounts of revenue apportioned and charged against the several counties and unpaid, are fully shown by the Auditor's books.

To compel the payment of the delinquencies as thus shown, as well as to authorize the counties to raise the amounts necessary therefor, is the purpose of the Act of 1863.

The term " to levy according to law," signifies in its common acceptation, *to raise, to collect by assessment* according to law, and as used in the Act of 1863, means to order the revenue which the counties have been heretofore ordered to assess and collect, and failed to do, as shown by the proper records, to be now done. No other construc-

tion can be allowed since the Territorial officers had no authority to assess or collect.

Had the Territorial officers the right to enforce from the counties the amounts stated in the Auditor's notice, the State authorities now possess the same right.

By virtue of the principles of international law, when the State succeeded the Territory, it succeeded to all the rights and liabilities attaching to the Territory as existing at that time within the Territory of the present State. 9 Wisconsin Reports, page 38, conclusively gives the case, it being an action against the State to compel the State to pay for a capital building erected for the Territory.

In addition thereto, the people of the State in adopting such change, expressly agreed that no change should re-sult therefrom in such rights and liabilities, [see Sec. 1, 2, 3 and 4 of Schedule to Constitution,] and their legisla-tures have since made provisions for carrying such agree-ment into effect, among others, providing payment for Territorial creditors, and to enforce collection of Territorial credits.

The State then holds the same obligation against the said counties that the Territory did.

Not only is State legislation upon this subject valid, but its purpose is equitable.

This county having received equal benefits with the other counties which have in part paid their said obliga-tions, injustice would be done were said county suffered to refuse to perform. Already has this county saved the use of the amount of their share of the Territorial tax for several years, while other counties have supported the government for its benefit.

*Fitzwilliams & Crozier*, for respondents.

*F. P. Fitzwilliams* and *R. Crozier* submitted:

The respondents claim that the law of 1863, which the Attorney General seeks to enforce, is void.

1st.   Because the Act of 1863, is not in conformity with Sec. 4, Art. 11, State Constitution.

2d.   The delinquent taxes sought to be collected, are due, if due at all, to the Territory, and not to the State.

Again, taxes are imposed by law upon the property of individuals, or upon them personally.   Counties are not therefore the debtors for such tax, but the person whose property is taxed.

No law previous to the Act of 1863, attempted to charge counties with the responsibility of collecting taxes or attempted to make them liable for such taxes.

*Sec.* 1, (*Chap.* 28, *p.* 409, *Comp. Laws,*) defines the corporate powers of the counties.

Again, property has at different times been sold for taxes, before the passage of the Act of 1863, and persons have lost and acquired title to property under the laws enforcing the payment or collection of delinquent taxes.

Parties may also have acquired title to property since the year 1860, and before the passage of the Act of 1863. To charge their property with this delinquent tax when they have discharged every burthen the Territorial and State government imposed on them, would certainly effect the substantial rights of individuals, and would be an arbitrary exercise of power, giving birth to great injustice, unrestrained by the Constitution of the State and of the United States.

3d.   The Act of 1863, is in direct conflict with Sec. 1, Art. 11, State Constitution.

*By the Court,* Cobb, C. J.

This is a motion for a mandamus to compel the defendants to levy with the taxes of 1863, an additional sum of $21,131.24 of unpaid Territorial taxes under the "Act to require certain counties to levy, collect and pay over delinquent Territorial taxes.   *Chap.* 63, *Laws of* 1863.   The motion is founded upon a sworn petition of the Attorney

General, alleging " that heretofore, to-wit, July 1st, 1863, there was due from Leavenworth County in said State, to said State of Kansas, the sum of twenty-one thousand one hundred and thirty-one dollars twenty-four cents, the same being the amount of Territorial tax due from said county, as it appears from the records of the Territorial and State Auditor's books, under the provision of the various laws to provide for revenue, enacted since January A. D. 1858, by the Governor and Legislative Assembly of the Territory of Kansas, by reason of the said county having failed and neglected to levy and collect the same according to law."

The petition also alleges the giving by the Auditor to the Clerk of said county, and by him to the defendants the notice required by said Act, and that they " have failed and refused to levy along with the other taxes for the year A. D. 1863, a tax for the payment of the said sum or any portion thereof, or to issue the bonds of said county of equal amount thereto, " and prays for a writ of mandamus to compel the levy of such tax, &c."

Section 1st of the Act of Feb. 26, 1863, under which this proceeding is instituted, is as follows :

" That the Auditor of State is hereby authorized and requested to give notice on or before the first day of July 1863, to the County Clerks of such counties as have failed or neglected to levy according to law the amount of Territorial tax due from them, as it appears from the records of the Territorial and State Auditor's books, under the provisions of the various laws to provide for revenue enacted since January 1st, A. D. 1858, such notice to set forth the amount of tax due from the county to which it is sent under the provisions of the Act aforesaid."

Section 2d, provides that the several Boards of the County Commissioners of the counties to which said notice shall be sent, shall levy and collect along with the other taxes for the year 1863, the amount specified in the Auditor's notice aforesaid, and shall pay the same into the State Treasury.

It is claimed by the defendants counsel who appeared and opposed the motion, that the Act in question is void for non-conformity to Sect. 4, of Art. 11 of the Constitution of the State, which reads as follows :

"No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which object only such tax shall be applied."

No such statement is found in the act we are considering. But it is claimed by the relator that the law being for the purpose of collecting unpaid taxes due from the several delinquent counties to the State, no such provision is necessary, it being not the levy of a new tax but the collection of one already laid. There is force in the argument if its premises are correct. But are such taxes due *from the counties ?*

State or Territorial taxes are imposed by law not upon counties but upon the people of the State or Territory, and the individuals upon whose property the tax is imposed or who are personally required to pay it, are alone debtors for such tax. Nor have the counties ever until the passage of Chapter 60 of the Laws of 1863, been charged with the responsibility of collecting or in any manner made liable for such taxes.

The first Section of Chapter 28 of the Laws of 1860, page 409, Com. Laws, defines the corporate powers of counties, as follows :

"That each organized county within this Territory shall be a body politic and corporate, and as such shall be empowered for the following purposes. *First*, to sue and be sued. *Second*, to purchase and hold real estate to the use of the county and lands sold for taxes as provided by law. *Third*, to sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants. *Fourth*, to make all contracts and do all other acts in relation to the property and concerns of the county

68 CASES IN THE SUPREME COURT.

The State ex rel. The Attorney General v. Commissioners Leavenworth Co·

necessary to the exercise of its corporate or administrative powers. *Fifth*, to exercise such other and further powers as may be especially conferred by law."

This law of the Territory is adopted by the constitution and in full force under the State Government. The powers conferred carry with them their corresponding obligations, but it is impossible to infer from it or from any other law in force before the passage of the Act of 1863, Chap. 60, above referred to, any responsibility of the county to the Territory or State, for Territorial or State taxes due from the people within its limits.

No obligation was imposed upon counties by the Statute for such taxes, nor any power given them to assume such responsibility. It is true the law imposes important duties upon county officers in the collection of such taxes, but their duties are imposed upon the several officers and not upon the county. They are performed not for the benefit of the county but of the State, and the State having the sole right to the benefit of such duties, has alone an ample remedy to coerce their performance by mandamus. Laches in the non-collection of such taxes is therefore imputable not to the county but to the State. And no ground is perceived for holding such unpaid tax to be due *from the county.*

Does the Act in question provide for collecting the old tax, or does it levy a new one upon the residents of and persons having property within such counties?

If it provides for collecting the old tax imposed by the law of 1860, the persons to pay that tax and the amount to be paid by each must be the same as they would have been by the provisions of that law. By the law of 1860, a tax of three mills upon the dollar was imposed upon the taxable property of the State according to the assessment of that year, and fifty cents upon every white male person between the ages of twenty-one and fifty years, while the Act of 1863, imposes the aggregate of the uncollected

tax upon the property taxable within such counties according to the assessment of the year 1863. These changes must vary essentially the amount imposed upon different parcels of real estate, and impose a tax for personal property upon many not liable to tax under the law of 1860. Most clearly then the Act in question attempts not the collection merely but the levying of a tax within the meaning of the constitutional provision cited.

Section 1 of Article 11 of the Constitution, provides that " the Leislature.shall provide for a uniform and equal rate of assessment and taxation," and this clause most clearly implies that taxes shall be levied only according to such uniform and equal rate. To comply with this provision, that taxes must be assessed uniformly upon the property of all parts of the State, and, while it may be quite consistent with justice and with this constitutional provision that persons owing taxes imposed by the law of 1860, should be compelled to pay them; to collect such taxes of others because they now reside or have property within the same county, unless the whole State is subjected to the same burthen, seems manifestly consistent with neither.

Reluctant as we are to differ with the legislative branch of the Government, we are compelled to conclude that the Act of 1863, in question, is inconsistent with the provisions of the constitution above cited, and therefore void, and the application for a mandamus must therefore be denied. Motion denied.

All the justices concurring.