*In re* Thomas Page.

### No. 11495.

INSURANCE— *Tax on Contracts with Unlicensed Companies— Invalid Statute.* Chapter 249, Laws of 1899, entitled "An act to provide for the taxation of contracts of insurance made with insurance companies not authorized to do business in Kansas and providing for the enforcement thereof," in part authorizes the imposition of a tax for other than public purposes. It is also a distinct departure from the constitutional rule of uniformity and equality and is invalid.

Original proceedings in *habeas corpus.* Opinion filed October 7, 1899. Petitioner discharged.

*In re* Page.

*Troutman & Stone*, for petitioner.

*A. A. Godard*, attorney-general, and *J. S. West*, for respondent.

The opinion of the court was delivered by

JOHNSTON, J.:  At the last session of the legislature there was passed a law entitled "An act to provide for the taxation of contracts of insurance made with insurance companies not authorized to do business in Kansas, and providing for the enforcement thereof." (Laws 1899, ch. 249.)  On May 26, 1899, Thomas Page, owner of the Mid-Continent mills in Topeka, wrote to the Indiana Millers' Mutual Fire Insurance Company, of Indianapolis, Ind., proposing to take out insurance on his mill property with that company. At the same time he remitted thirty dollars to pay for a five-year policy on $2000 of insurance.  The money was received and accepted by the company, and on May 29, 1899, the company, at its office in Indianapolis, issued a policy in accordance with the request of Page, placed it in the post-office, and by due course of mail it was received by Page at Topeka.  The company was not authorized to do business in Kansas, and had no office, agent, solicitors or representatives in the state.  In June, 1899, the superintendent of insurance made a demand on Page to exhibit his contracts and policies of fire insurance, and especially those issued by companies not authorized to do business in Kansas, but the demand was refused.  Page never reported the policy mentioned to the superintendent of insurance, and never paid any tax on the premium therefor.  The demand was made and the payment of the tax required in an attempt to enforce the act above mentioned.  The statute provides that

persons insuring property in Kansas with companies not authorized to do business in the state shall report the contracts of insurance to the superintendent of insurance for the purpose of taxation. All such contracts are to be taxed "in a sum equal to ten per cent. of the amount of premiums paid or contracted to be paid thereon, which said tax shall be paid by such insured to the superintendent of insurance, and the payment thereof shall be enforceable by process of law as other like taxes are, and said tax shall be a lien on said property so insured together with other taxes lawfully assessed against the same." It further provides that the taxes when collected shall be applied as follows: "Three-fifths thereof to the payment of the expenses of the insurance department, and two-fifths thereof shall be paid by said superintendent of insurance to the treasurer of the city or township in which said property so insured is situate for the benefit of the fire department thereof, if such department exists or be organized, whether paid or volunteer; otherwise, to be used in the general fund of said city or township." There is a provision requiring the owners of property to exhibit on demand to the superintendent of insurance, and to certain city or township officers, all policies or contracts of insurance, other than life and accident, made by companies or parties not authorized to do business in the state, but such policies or contracts are not required to be exhibited oftener than once every six months. Any violation of the provisions of the act is deemed to be a misdemeanor, and the failure to report the making of such a contract of insurance to the superintendent of insurance is punishable by a fine not exceeding $100; and a like penalty is inflicted on any person who fails or refuses to exhibit such insurance policies on de-

*In re* Page.

mand of the officers.  Page denied the validity of the
law and refused to comply with its requirements, and
with a view of testing its validity and to enforce its
provisions the superintendent of insurance caused the
arrest of the petitioner.  It is challenged on several
grounds, one of which is that it conflicts with section
1, article 11, of the constitution, requiring that "the
legislature shall provide for a uniform and equal rate
of assessment and taxation."

It will be observed that the burden imposed by the
act is not a license, nor a charge placed upon a privi-
lege, franchise, or occupation.  It is specifically des-
ignated as a tax, and is levied upon insurance con-
tracts, which are treated as taxable assets and property
of the insured.  The act is an anomaly in the method
of raising public revenues, and constitutes a wide de-
parture from the means of taxation heretofore em-
ployed in this state.  It is said that a tax is ordinarily
levied on the property, income or receipts of the tax-
payer, and not upon what he has paid out.  Counsel
for the petitioner assert that "this is the pioneer ef-
fort to tax losses and disbursements, instead of profits
and accumulations.  It is the only recorded instance
of requiring a man to pay a tax, not upon what he hath
or seemeth to have, but confessedly upon what he hath
not."  Such contracts, however, indemnify the in-
sured against loss, and have some of the characteristics
of bonds, mortgages and other like securities which are
made the subjects of taxation.  They have property
value susceptible of measurement, and it was compe-
tent, therefore, for the legislature to treat them as
property, as it did, and to make them subject to taxa-
tion.  (*A. T. & S. F. Rld. Co. v. Howe, Treasurer*, 32
Kan. 737, 5 Pac. 397.)  Being a property tax, the con-
stitutional limitations upon the taxation of all the

property in the state are applicable and controlling. In the absence of constitutional restrictions, the sovereign power of the state may be exercised almost without limitation in determining what should be subject to taxation, and the manner of levying and collecting taxes.    Of course, arbitrary and unequal exactions cannot be levied upon persons or property, nor can revenues raised by the exercise of this power be expended for other than public purposes.    Unless, however, a tax for public purposes be imposed on false and unjust principles, or violate an express provision of the constitution, the will of the legislature is conclusive. Our constitution contains an express limitation on the power to tax by requiring the legislature to '' provide for a uniform and equal rate of assessment and taxation.''    While this provision has no application to license, capitation or special taxes, it does apply to direct taxes on property. ( *Hines and others v. The City of Leavenworth and others*, 3 Kan. 200 ; *Comm'rs of Ottawa Co. v. Nelson*, 19 Kan. 234.)    As will be observed, the constitution contemplates that there will be an assessment or valuation of the property to be used as a basis of the levy ; and in this way equality and uniformity of taxation may be had upon all the property within the taxing district.    Although assessment is the most important of all the steps in the imposition of taxes, no assessment or valuation is required by the act or made upon the property sought to be taxed in this case.    '' It will be observed that the constitution does not in terms require that the property in the state should be taxed according to its value, but it must be apparent to every one that such was the intention of the constitution makers.    Taxes cannot be levied upon equal and uniform rate except upon the value.''    (*Hines v. Leavenworth*, supra.)    To ac-

*In re* Page.

complish the uniformity and equality required by the constitution, it would appear that assessment or valuation is indispensable, and yet in this case the legislature, without assessment or valuation of the property, attempts to make an arbitrary exaction. All other property in the state is required to be taxed at its true value in money, but here no account is taken of the solvency of the company or the value of the security or policy. However values of other property may fluctuate or the rate of taxation thereon may change from year to year, no change is made in the tax levied on the property in question.

The lack of uniformity is manifest in another way : One taxpayer has a policy written in the state by a company with authority on which no tax is imposed, while his neighbor has one written by an unlicensed company at Indianapolis, or other place outside of the state, which is subject to taxation. Taxes are uniform and equal when imposed on all property of the same character within the taxing district, and yet here the insured pays a ten per cent. tax upon a policy written outside of the state, while his neighbor pays nothing on a policy of equal value and affording the same protection because it is written within the state. Contracts of insurance written outside of the state cannot be regarded as illegal. Aside from the consideration that they may not be Kansas contracts and are therefore beyond the reach of the legislature, the act itself contemplates that such contracts may and will be made, and when made are to be treated as property within the state and become the subject of taxation here. This is an invidious discrimination, purposely made, and is a distinct departure from the constitutional rule of uniformity. (*The State, ex rel. the Attorney General, v.*

*Commissioners Leavenworth Co.*, 2 Kan. 61 ; *Hines v. Leavenworth*, supra ; *Graham v. Com'rs of Chautauqua Co.*, 31 Kan. 473, 2 Pac. 549 ; *A. T. & S. F. Rld. Co. v. Howe*, supra ; *M. & M. Rly. Co. v. Champlin, Treas.*, 37 Kan. 682, 16 Pac. 222 ; *People v. Hastings*, 29 Cal. 449 ; *Marsh v. The Supervisors of Clark Co.*, 42 Wis. 502 ; *Slaughter, etc., v. City of Louisville*, 89 Ky. 112.)

Another ground on which the act is assailed is, that in part the tax is levied for a private and illegal purpose.   Two-fifths of the taxes to be raised are to be used for the benefit of the fire department of a city or township, whether paid or volunteer.   All will agree that taxation for other than public purposes is unjustifiable.   For the maintenance of a fire department public money may be raised and expended, and if the municipality incurs any legitimate expense in providing such an organization taxes may be imposed therefor.   The taxing power of the state, however, can hardly be exercised in order to bestow public money on a department made up of volunteers who are not employed by the municipality, and for whose services no expense is assumed or incurred by it.   However commendable the object of such an organization may be, and however valuable the services of the members may be, it is clear that public money can only be used to discharge a public liability.   As will be observed, the money when collected is to be applied to the benefit of such a department and not for the benefit of the municipality, but taxes cannot be imposed nor public money expended for the benefit of private individuals or enterprises, nor can it be given away for such purposes.

For the reasons stated, we conclude that the statute is invalid and the tax illegal, and therefore the petitioner will be discharged.