No. 53,478

STATE OF KANSAS, *ex rel.,* ROBERT T. STEPHAN, Attorney General, *Petitioner,* v. PHILIP W. MARTIN, Director of Property Valuation, Kansas Department of Revenue, *Respondent,* and THE KANSAS FARM BUREAU, INC., THE KANSAS LIVESTOCK ASSOCIATION, INC., and THE KANSAS ASSOCIATION OF WHEAT GROWERS, INC., *Intervenors.*

(641 P.2d 1020)

Opinion filed February 27, 1982.

*Rodney J. Bieker,* assistant attorney general, argued the cause, and *Robert T. Stephan,* attorney general, and *Dan Biles,* assistant attorney general, were with him on the brief for the petitioner.

*Alan F. Alderson,* general counsel, Kansas Department of Revenue, argued the cause and was on the brief for the respondent.

*E. Richard Brewster,* of Gehrt & Roberts, Chartered, of Topeka, and *Charles S. Arthur,* of Arthur, Green, Arthur & Conderman, of Manhattan, argued the cause and were on the brief for the intervenors.

The opinion of the court was delivered by

MILLER, J.: This is an original action in quo warranto brought by the State on relation of the attorney general against the respondent, Philip W. Martin, director of property valuation of the Kansas Department of Revenue, seeking a determination of the constitutionality of Section 1 of Chapter 373 of the 1981 Session Laws of Kansas, now K.S.A. 1981 Supp. 79-343. We will refer to it hereafter as "Section 343." It establishes a method of assessing the value of farm machinery and equipment for the purposes of ad valorem taxation. It is challenged as being violative of Article 11, Section 1, of the Kansas Constitution. The Kansas Farm Bureau, the Kansas Livestock Association, Inc., and the Kansas Association of Wheat Growers, Inc., were permitted to intervene.

The sole issue is whether Section 343 violates Article 11, Section 1, of the Kansas Constitution.

We start our examination of this issue in light of the rule that the constitutionality of a statute is presumed; that all doubts must be resolved in favor of its validity, and before a statute may be stricken, it must clearly appear that the statute violates the Constitution. It is the court's duty to uphold the statute under attack, if possible, rather than defeat it. If there is any reasonable way a statute may be construed constitutionally permissible, that should be done. *Board of Greenwood County Comm'rs v. Nadel,* 228 Kan. 469, 472-73, 618 P.2d 778 (1980); *State ex rel. Stephan v. Lane,* 228 Kan. 379, Syl. ¶ 1, 614 P.2d 987 (1980).

The facts are stipulated. The Act in question, then known as

Senate Bill No. 26, was enacted during the 1981 Session of the Kansas Legislature, was signed by the Governor, was published in the statute book, and became effective January 1, 1982. K.S.A. 1981 Supp. 79-343 reads as follows:

"(*a*)(1) The fair market value for all powered farm machinery and equipment, for the purposes of ad valorem taxation, shall be the average loan value of such machinery and equipment in its model year of manufacture, based upon nationally published guides or other trade sources, hereinafter referred to as the initial value thereof, reduced by 10% of such value per year of age from the model year of manufacture of such machinery and equipment, not to exceed a total of 80% pursuant to the following schedule:

| Model Year | Fair Market Value |
|---|---|
| Current model year | 100% of initial value as determined above |
| 1st year following model year | 90% of initial value as determined above |
| 2nd year following model year | 80% of initial value as determined above |
| 3rd year following model year | 70% of initial value as determined above |
| 4th year following model year | 60% of initial value as determined above |
| 5th year following model year | 50% of initial value as determined above |
| 6th year following model year | 40% of initial value as determined above |
| 7th year following model year | 30% of initial value as determined above |
| 8th year and all succeeding years following model year | 20% of initial value as determined above. |

"(2) The fair market value for all non-powered farm machinery and equipment, for the purposes of ad valorem taxation, shall be the average loan value of such machinery and equipment in its model year of manufacture, based upon nationally published guides or other trade sources, hereinafter referred to as the initial value thereof, reduced by 20% of such value per year of age from the model year of manufacture of such machinery and equipment, not to exceed a total of 80% pursuant to the following schedule:

| Model Year | Fair Market Value |
|---|---|
| Current model year | 100% of initial value as determined above |
| 1st year following model year | 80% of initial value as determined above |
| 2nd year following model year | 60% of initial value as determined above |

3rd year following model year ........................ 40% of initial value as determined above

4th year and all succeeding years following model year ........................ 20% of initial value as determined above.

"(3) The fair market value determined for farm machinery and equipment under the foregoing provisions shall be utilized in the personal property guides devised or prescribed by the director of property valuation under the provisions of K.S.A. 75-5105a, and amendments thereto, and furnished to the counties for use in valuing such property for taxation.

"(4) It shall be the duty of the county appraiser to value all farm machinery and equipment utilizing the guides devised or prescribed by the director of property valuation based upon values established under the provisions of parts (1) and (2) of this subsection except that the appraiser shall deviate from the value so established when the value assigned to such property in accordance with parts (1) and (2) of this subsection does not reflect the fair market value of the particular property involved as provided for by parts (1) and (2) of this subsection.

"(b) The term 'farm machinery and equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as said terms are defined by K.S.A. 1980 Supp. 8-126 and amendments thereto."

Two years ago this court had before it for determination the constitutionality of the predecessor of Section 343, that being K.S.A. 1979 Supp. 79-342, enacted by the legislature in 1978. In *State ex rel. Stephan v. Martin,* 227 Kan. 456, 608 P.2d 880 (1980) (*Martin I*), we declared 79-342 unconstitutional. That Act directed the county appraisers to subtract 20% from the estimated average values of farm machinery and equipment, as indicated by the 1979 Kansas appraisal guide for farm machinery and equipment prepared by the director of property valuation. The 1978 Act applied only to farm machinery and equipment "used by the owner thereof in conducting a farming or ranching operation." It also included a statement of purpose which, in substance, was to grant tax relief to farmers and ranchers. We found that the effect of the Act was to lower the fair market value in money of farm machinery and equipment used by the owners in farming and ranching by an arbitrary 20%; that the Act created a subclass which was granted partial exemption from taxation; and that the Act destroyed the uniformity and equality in the rate of assessment of tangible personal property required by Article 11, Section 1, of our Constitution.

Chief Justice Schroeder wrote the opinion for a unanimous court in *Martin I.* He discussed the fundamentals underlying our

consideration of the 1978 Act, including the constitutional provision, its history, the cases construing it, and the related assessment and taxation statutes. Since the same discussion is germane to a consideration of the 1981 Act, we quote at length from that opinion:

"Article 11, § 1 of the Kansas Constitution is the fundamental law against which the validity of K.S.A. 1979 Supp. 79-342 must be tested. In clear and simple language that fundamental law vests the State's taxing authority in the legislature, stating:

'The legislature shall provide for a uniform and equal rate of assessment and taxation, except that the legislature may provide for the classification and the taxation uniformly as to class of motor vehicles, mineral products, money, mortgages, notes and other evidence of debt or may exempt any of such classes of property from property taxation and impose taxes upon another basis in lieu thereof. All property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and all household goods and personal effects not used for the production of income, shall be exempted from property taxation.'

"In response to the constitutional command to provide for a *uniform and equal rate of assessment and taxation* the legislature has enacted many statutes. Among the statutes material to a decision herein are the following:

"K.S.A. 79-501 provides:

'Each parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the assessor from actual view and inspection of the property; but the price at which such real property would sell at auction or forced sale shall not be taken as the criterion of such fair market value in money. Tangible personal property shall be appraised at its fair market value in money at the place where the same may be held. All such real and tangible personal property shall be appraised at its fair market value in money and assessed as required in K.S.A. 79-1439.'

"K.S.A. 79-1406 provides:

'All property, real or personal, shall be appraised at its fair market value in money, and all real and tangible personal property which is subject to general property taxes shall be assessed at its fair market value in money as required in K.S.A. 79-1439.'

"K.S.A. 79-1439 provides in pertinent part:

'[A]ll real and tangible personal property which is subject to general property taxes shall be appraised uniformly and equally at its fair market value in money, as defined in K.S.A. 79-503, and assessed at thirty percent (30%) thereof.'

"K.S.A. 79-503, in pertinent part, provides for the determination of fair market value in money as follows:

'Fair market value in money shall mean the amount of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting, assuming that the parties thereto are acting without undue compulsion and that the property has been offered at the market place for a reasonable length of time. Sales in and of themselves shall not be the sole criteria of fair market

value but shall be used in connection with cost, income and such other factors as may be appropriate including but not by way of exclusion:

'(a) The proper classification of lands and improvements;

'(b) the size thereof;

'(c) the effect of location on value;

'(d) depreciation, including physical deterioration or functional, economic or social obsolescence;

'(e) cost of reproduction or improvements;

'(f) productivity;

'(g) earning capacity as indicated by lease price or by capitalization of net income;

'(h) rental or reasonable rental values;

'(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values; and

'(j) comparison with values of other property of known or recognized value. The ratio study shall not be used as an appraisal for appraisal purposes.'

. . . .

"Article 11, § 1 is probably one of the most litigated provisions of the Kansas Constitution; it has been amended three times since the original version was adopted in 1859 at the Wyandotte Convention. One of the earliest decisions by this Court interpreting the meaning of art. 11, § 1 was *Hines et al. v. City of Leavenworth et al.,* 3 Kan. °186 (1865). Explaining the meaning of uniform and equal assessment, the Court stated:

'*Each man in the State, county and city, is equally in proportion to his property interested in maintaining the State, county and city governments, and in that proportion should bear the burden equally.* There is a justice in this arrangement which commends it to the approbation of any right thinking man . . . .' 3 Kan. °201-02. (Emphasis added.)

"In 1915 the Court had occasion to review many of our prior decisions interpreting art. 11, § 1. In *Wheeler v. Weightman,* 96 Kan. 50, 58, 149 Pac. 977 (1915) this following statement was made:

'The foregoing decisions, covering the period of the state's history to the year 1900, are full, clear, consistent with each other, and indubitably sound. The doctrine they announce was the one with which the people were familiar when the constitution was framed, and the work of the constitutional convention consisted principally in stating the doctrine in suitable phraseology. The essentials are that each man in city, county, and state is interested in maintaining the state and local governments. The protection which they afford and the duty to maintain them are reciprocal. The burden of supporting them should be borne equally by all, *and this equality consists in each one contributing in proportion to the amount of his property.* To this end all property in the state must be listed and valued for the purpose of taxation, the rate of assessment and taxation to be uniform and equal throughout the jurisdiction levying the tax. The imposition of taxes upon selected classes of property to the exclusion of others, and the exemption of selected classes to the exclusion of others, constitute invidious discriminations which destroy uniformity. *That the system works badly now is ground for change, but the system having been established by the constitution as a limitation on the power of the legislature, the constitution must be changed before the system can be changed.'* (Emphasis added.)

"The legislature eventually responded to the decision in *Wheeler,* and in 1924 an amendment to art. 11, § 1 was adopted. The amendment, *inter alia,* permitted classification of mortgages for taxation under the exception to the 'uniform and equal rate of assessment and taxation.' Attempted exemption of mortgages from taxation was the basis of the action in *Wheeler.*

"Here we are confronted with an unsatisfactory method of assessing and taxing farm and ranch machinery as part of the ad valorem tax plan. For the reasons hereafter assigned we must repeat now what the Supreme Court said in *Wheeler:* 'the constitution must be changed before the system can be changed.'

"This Court has repeatedly held that art. 11, § 1 of the Kansas Constitution requires the legislature to provide for uniformity in the basis of assessment as well as in the rate of taxation. Uniformity in taxing implies equality in the burden of taxation. *Gordon v. Hiet,* 214 Kan. 690, 693, 522 P.2d 942 (1974); *Northern Natural Gas Co. v. Bender,* 208 Kan. 135, 143, 490 P.2d 399 (1971), *cert. denied* 406 U.S. 967 (1972); *Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, 286, 440 P.2d 634 (1968); *Addington v. Board of County Commissioners,* 191 Kan. 528, Syl. ¶ 3, 382 P.2d 315 (1963).

"The foregoing cases stand for the proposition that all property which is subject to general property taxation must be valued or assessed on an equal basis. In the recent case of *State ex rel. Schneider v. City of Topeka,* 227 Kan. 115, Syl. ¶ 5, 605 P.2d 556 (1980), this principle is acknowledged where the Court states: 'When the rate of property assessment is uniform throughout a taxing district, the constitutional mandate of uniform and equal taxation has been fulfilled.'

"The term 'assessment' as employed in art. 11, § 1 means the process of listing and valuing property for taxation. See *Commercial National Bank v. Board of County Commissioners,* 201 Kan. 280, Syl. ¶ 3; *Wheeler v. Weightman,* 96 Kan. at 53.

"The legislature, in responding to the mandate of art. 11, § 1 of the Kansas Constitution that it provide for a uniform and equal rate of assessment and taxation, has provided that all property subject to taxation be valued on an equal basis. The equal basis currently provided by the legislature is 'fair market value in money.' 'Fair market value' has a well defined meaning in our free economy and in case law. The legislature defined 'fair market value' in K.S.A. 79-503 in substantially the same language as this Court has defined it, and as it is generally understood and accepted. *Mobil Pipeline Co. v. Rohmiller,* 214 Kan. 905, 926, 522 P.2d 923 (1974)." pp. 458-62.

The statute now before us, Section 343, applies to all powered and non-powered farm machinery and equipment. It does not require the arbitrary deduction of twenty percent of the value per se, as did the 1978 Act. It is not limited in its application because of the use of the property. Finally, it contains no express statement of purposes. Section 343 simply declares that the initial fair market value for all powered and non-powered farm machinery and equipment, for the purposes of ad valorem taxation, *shall be the average loan value* of the machinery and equipment *in its model year of manufacture, based upon nationally published*

*guides or other sources.* Thus the "initial" value of the property is fixed by reference to the *average loan value* in the model year of manufacture.

What is "average loan value"? The term is frequently used in banking, finance, and sales parlance, and is commonly and widely understood. The "loan value" of an item of tangible personal property is the amount of money a lending agency will loan to the purchaser or owner of the particular item, when that item and nothing else is pledged as security for a loan. The "average loan value" of an item of tangible personal property is the average amount of money various lending agencies will loan on like items.

Americans by the millions purchase manufactured goods on credit. Directories and guides listing the various makes and models of automobiles, trucks, motorcycles, tractors, farm machinery, recreational vehicles, and other items of personal property are published annually; some are updated quarterly. Such guides customarily list the original "new" or "list" price, and the average selling price and loan value for each make and model manufactured in the last few years prior to publication, and thus serve as a reference for those engaged in buying or selling the enumerated property, or making loans thereon to owners or purchasers. Some guides give various prices—the original list price, the average retail or sales price (varying with age and condition), the average "as is" price, and the average loan value for each item. These are given not only for items that are new, but for items one or more years old. The average loan value is consistently the lowest value or price given for each item; above that are the "as is" price, the average retail or resale price, and the original "list" price.

The Spring 1980 "Official Guide" to "Tractors and Farm Machinery," published by National Farm and Power Services, Inc., an affiliate of the National Farm and Power Equipment Dealers Association, St. Louis, Missouri, is an example of a nationally published guide to farm machinery and equipment. It gives the following data for two 1979 model Allis-Chalmers diesel tractors (the 1979 model year being the most recent before the issuance of the Spring 1980 issue):

| Model Series | 7000 | 8550 |
|---|---|---|
| Model Year | 1979 | 1979 |
| F.O.B. Factory (suggested list price) | $24,860 | $68,451 |
| Average Resale Price | $21,901 | $62,479 |
| Average "as is" Price | $18,352 | $52,461 |
| Average Loan Value | $15,599 | $44,591 |

According to the publisher, average resale price is computed on actual sale prices of machines as reported by dealers, and average "as is" price is computed by subtracting the average reconditioning cost from the average resale price, then deducting fifteen percent from that difference. The average "as is" price is a suggested "trade in" price. The average loan values shown throughout the guide are nearly 30% less than the average resale prices and about 15% less than the average "as is" prices. It is readily apparent that the average loan value, while having some correlation with fair market value, is not the price "a well informed buyer is justified in paying and a well informed seller is justified in accepting." See K.S.A. 79-503.

Article 11, Section 1, of the Constitution requires the legislature to provide "a uniform and equal rate of assessment" with certain exceptions. Farm machinery and equipment are not included within the exceptions. The legislature has responded to Article 11, Section 1, with K.S.A. 79-501, which requires that tangible personal property be appraised at its fair market value in money, and by K.S.A. 79-503, which defines fair market value in money and enumerates various factors to be considered in determining that value.

Section 343 specifically and unequivocally provides that the initial fair market value for all farm machinery and equipment *shall be the average loan value* of that property. The initial value is thus arbitrarily fixed at "average loan value," a value which we have seen is 15% to 30% less than various sale prices, without regard to the amount of money a well informed buyer is justified in paying and a well informed seller is justified in accepting, and without regard to the condition of the property or its sale value on the open market. All other tangible personal property, not excepted from Article 11, Section 1 of the Constitution, must have its value fixed and determined pursuant to K.S.A. 79-503. The differential treatment is obvious to the most casual observer.

Section 343 also provides for the automatic annual reduction of the initial value by 10% in the case of powered and 20% in the

case of non-powered farm machinery and equipment, regardless of the actual fair market value in money. All other nonexcepted personal property, meanwhile, must be appraised annually in conformity with K.S.A. 79-503 and K.S.A. 79-1439 at its current fair market value in money. Under Section 343, neither inflation or deflation is reflected in the appraisal of farm machinery and equipment; Section 343 would completely insulate and shield this specific type of personal property from inflation. As we said in *Martin I,* "to shield certain property, that is, 'farm machinery and equipment,' from the effects of inflation, when inflation is affecting all property, is an act of discrimination, inconsistent with art. 11, § 1 of the Kansas Constitution." 227 Kan. at 467.

This court is acutely aware of the plight of farmers and ranchers in these recent years of drought and flood, deflated farm prices, and an ever-increasingly inflated economy. As the Chief Justice pointed out in *Martin I,* however, "Economic distress is no justification for ignoring the constitution." 227 Kan. at 468.

Respondent and intervenors argue that Section 343 provides nothing more than a different method of achieving fair market value in money, and that the guide which the respondent is directed to prepare by K.S.A. 75-5105a *may* reflect the fair market value in money of farm machinery and equipment. No such guide had been prepared by the respondent when this case was briefed, and his official 1982 guide valuing farm machinery and equipment is not before this court. Respondent and intervenors fail to recognize, however, that Section 343 makes *average loan value* the fair market value of such property; the director of property valuation is required by subparagraph (*a*)(3) of the Act to utilize that value in devising guides furnished to the counties for use in valuing such property for taxation. Average loan value, as we have seen, is not fair market value. The legislature cannot change the inherent nature of a rose by calling it by a different name. Anything less than fair market value is not fair market value. The legislature has attempted to create a separate definition of fair market value, applicable to but one kind of property. The initial value is reduced each year regardless of economic conditions. This is clearly an attempt to create an aberrant and unequal assessment in violation of the constitutional mandate.

Respondent and intervenors also contend that even if the required reliance on average loan value does not produce fair market value, the final figures must be adjusted by the county

appraisers to reflect actual fair market value pursuant to subsection (*a*)(4) of Section 343. That subsection, however, requires deviation by the county appraisers only when the value assigned in accordance with subsections (*a*)(1) and (2) fails to reflect fair market value *as provided by parts (1) and (2)!* Deviation is *not* required when the subsection (1) and (2) values fail to reflect fair market value in money as defined by K.S.A. 79-503, and as that phrase is generally understood and accepted both in our free economy and in our case law. In *Martin I*, language parallel to that of subsection (*a*)(4) of Section 343 was examined and held to be ineffective to cure the fatal error of K.S.A. 1979 Supp. 79-342, since it merely referred back to part (*a*)(1) of that statute which, like parts (*a*)(1) and (2) of Section 343, failed to provide for assessment at fair market value in money. Subsection (*a*)(4) does not cure the obvious defects of subsections (*a*)(1) and (2) of Section 343.

We have carefully considered all arguments made and all authorities cited by respondent and intervenors, but find them unpersuasive.

The legislature has attempted by Section 343 to grant tax relief by fixing a different, reduced, and discriminatory basis of assessment for certain property. The section thus violates the requirement of uniform and equal assessment mandated by Article 11, Section 1, of the Kansas Constitution. It creates an unlawful classification of personal property for ad valorem tax purposes. As announced in our interim opinion, filed earlier this year, we hold that the statute, K.S.A. 1981 Supp. 79-343, is unconstitutional and void. The respondent is ousted and precluded from acting thereunder.

Relief in the nature of quo warranto is granted.

SCHROEDER, C.J., dissenting: In my opinion, the petitioner has failed to sustain his burden of proof, and the constitutional validity of K.S.A. 1981 Supp. 79-343 should be upheld. A construction of the specific statute involved as well as recognition of this court's traditional commitment to upholding legislation if possible dictate that result. A comparative analysis of three *Martin* opinions further illustrates my position: *State ex rel. Stephan v. Martin*, 227 Kan. 456, 608 P.2d 880 (1980) (hereafter referred to as *Martin I*); the opinion herein, *State ex rel. Stephan v. Martin*, (hereafter referred to as *Martin II*); and *State ex rel. Stephan v.*

*Martin,* 230 Kan. 747, 641 P.2d 1011 (1982) (hereafter referred to as *Martin III*).

This case (*Martin II*) is before the court on a stipulation of facts. The court in its opinion concedes as much. 230 Kan. at 760. The first five stipulations concern merely a recital of the parties and references to the constitution and the enactment of 1981 Senate Bill No. 26, now K.S.A. 1981 Supp. 79-343. The stipulation of facts material herein then further provides:

"6. Respondent must presume the constitutionality of statutes and, unless a court of competent jurisdiction declares unconstitutional the provisions of 1981 Senate Bill No. 26, Respondent will proceed to act under the authority of the provisions of section 1 of 1981 Senate Bill No. 26.

"7. The Kansas Supreme Court has original jurisdiction in proceedings in quo warranto, pursuant to Article 3, Section 3 of the Kansas Constitution and K.S.A. 60-1202, *but where substantive factual questions are presented, the Supreme Court may transfer an original action to the appropriate district court or dismiss the same,* pursuant to Rule 9.01 of the Rules of the Supreme Court.

"8. Exhibit A, attached to the petition, is a true copy of Senate Bill No. 26, as signed by the Governor and certified by the Secretary of State.

"9. *At this time, the Director of Property Valuation has not prepared nor distributed any guide to be used in 1982 for the valuation of farm machinery and equipment.*

"10. *At this time, no county appraiser or any other person has appraised or assessed any personal property under the provisions of 1981 Senate Bill No. 26.*

"11. The 1981 Kansas Legislature was aware of the case of *State ex rel. Stephan v. Martin,* 227 Kan. 456, 608 P.2d 880 (1980) and the provisions of K.S.A. 1979 Supp. 79-342, which were held to violate the provisions of art. 11, § 1 of the Kansas Constitution therein." (Emphasis added.)

No material facts, other than those quoted above, and *no other evidence* are before the court in this case, except the following. On motion of the attorney general an order was entered which permitted the filing of complete copies of the 1981 Kansas Appraisal Guide for Miscellaneous Personal Property and the 1981 Kansas Appraisal Guide for Construction Equipment. The court can take judicial notice of these guides because they are official state documents prepared by a state official. The respondent, director of property valuation, also filed an affidavit with his answer to the petition which reads in part:

"That, as of this date, affiant has not completed the personal property guides for farm machinery and equipment required to be devised or prescribed under the provisions of K.S.A. 75-5105a and 1981 Senate Bill No. 26. Affiant further states that, when issued and distributed pursuant to law, said farm machinery and equipment guides will instruct county appraisers to apply all pertinent statutory

factors enumerated in K.S.A. 79-503, in valuing farm machinery and equipment, if the guides does not properly take any or all of such factors into account for the purpose of valuing such equipment at fair market value in money."

My reasons for noting this affidavit will be discussed later.

K.S.A. 1981 Supp. 79-343, pertinent to construction of the act, reads:

"(*a*)(1) The fair market value for all powered farm machinery and equipment, for the purposes of ad valorem taxation, shall be the average loan value of such machinery and equipment in its model year of manufacture, based upon nationally published guides or other trade sources, *hereinafter referred to as the initial value thereof,* reduced by 10% of such value per year of age from the model year of manufacture of such machinery and equipment, not to exceed a total of 80%

.    .    .    .

"(2) The fair market value for all non-powered farm machinery and equipment, for the purposes of ad valorem taxation, shall be the average loan value of such machinery and equipment in its model year of manufacture, based upon nationally published guides or other trade sources, *hereinafter referred to as the initial value thereof,* reduced by 20% of such value per year of age from the model year of manufacture of such machinery and equipment, not to exceed a total of 80%

.    .    .    .

"(3) The fair market value determined for farm machinery and equipment under the foregoing provisions *shall be utilized in the personal property guides devised or prescribed by the director of property valuation under the provisions of K.S.A. 75-5105a,* and amendments thereto, *and furnished to the counties for use in valuing such property for taxation.*

"(4) It shall be the *duty of the county appraiser to value all farm machinery and equipment utilizing the guides devised or prescribed* by the director of property valuation based upon values established under the provisions of parts (1) and (2) of this subsection *except that the appraiser shall deviate from the value so established when the value assigned to such property in accordance with parts (1) and (2) of this subsection does not reflect the fair market value of the particular property involved* as provided for by parts (1) and (2) of this subsection.

"(b) The term 'farm machinery and equipment' shall not include any passenger vehicle, truck, truck tractor, trailer, semitrailer or pole trailer, other than a farm trailer, as said terms are defined by K.S.A. 1980 Supp. 8-126 and amendments thereto." (Emphasis added.)

Application of rules of construction frequently stated and applied by the Supreme Court of Kansas to give effect to the legislative intention expressed in a statute requires a determination that the uniform and equal requirements of Article 11, Section 1, of the Kansas Constitution are not violated. The court, however, goes completely outside the record in its opinion in this case *to muster evidence on its own* and, based on such evidence, *finds* the provisions of K.S.A. 1981 Supp. 79-343 are in substance the same as the provisions of K.S.A. 1979 Supp. 79-342, held to be

unconstitutional in *Martin I.* The court quotes at length (four full pages) from that opinion. 227 Kan. at 458-62.

The legislature in K.S.A. 1979 Supp. 79-342 directed the county appraiser to determine fair market value of farm machinery and equipment by utilizing the *estimated average value* of farm machinery and equipment as indicated by the *1979 Kansas Appraisal Guide* for farm machinery and equipment as devised and prescribed by the director of property valuation. The estimated average value was assumed to be *the fair market value from which the county appraiser was directed to subtract 20%,* before assessing it at 30% of fair market value pursuant to K.S.A. 79-1439. *Martin I,* 227 Kan. at 460, 462-63.

The court, by way of advice to the legislature, said in *Martin I,* 227 Kan. at 466:

"This law is inseparably linked to the appraisal guide; *if the legislature found the guide was wrong,* action should have been taken to correct the guide." (Emphasis added.)

Thereafter, the 1981 Kansas Legislature, in its wisdom, determined that the farm machinery and equipment guide prescribed by the director of property valuation pursuant to K.S.A. 75-5105a did not establish the fair market value in money for farm machinery and equipment. Accordingly, the legislature enacted Senate Bill No. 26, now K.S.A. 1981 Supp. 79-343.

It is well established that courts must presume the legislature will not do a vain act. At the time the legislature enacted K.S.A. 1981 Supp. 79-343, this court's ruling in *Martin I* had been made, and the opinion was available to members of the legislature who presumably were guided by that opinion in enacting K.S.A. 1981 Supp. 79-343.

K.S.A. 1981 Supp. 79-343, in contrast to K.S.A. 1979 Supp. 79-342, is not a legislative attempt to start with fair market value and reduce the assessment by any percentage. It is rather an attempt to legislatively establish a mode of determining the actual fair market value. K.S.A. 1981 Supp. 79-343 provides that the property valuation director shall establish the average loan value of farm machinery and equipment in its year of manufacture, and annually therefrom deduct a percentage set forth in the statute. The petitioner is arguing that this method simply cannot lead to fair market value of any given piece of farm machinery or equipment. This conclusion is not supported by substantial competent

evidence because the appraisal guide for farm machinery and equipment has not been published. K.S.A. 1981 Supp. 79-343 does not tell the property valuation director how to determine the average loan value. He is directed to take into consideration in determining the average loan value "nationally published guides or other trade sources" and base his determination as to average loan value on those sources of information. However, until and unless this court can examine those nationally published guides or "other" trade sources, this court cannot conclude, as a matter of law, that the method of arriving at the value of farm machinery and equipment provided for by K.S.A. 1981 Supp. 79-343 will not result in a valuation which reflects fair market value.

K.S.A. 1981 Supp. 79-343 differs in other respects from K.S.A. 1979 Supp. 79-342. The previous legislation, for example, provided for different valuations of identical items of personal property depending upon the occupation of the owner of that property. K.S.A. 1981 Supp. 79-343 does not contain that questionable distinction.

K.S.A. 1979 Supp. 79-342 was clearly enacted for the purpose of reducing the personal property tax burden upon farmers, a specific class of property owners. It was enacted to reduce the value upon which the personal property tax would be based. Since the act did not apply to all other forms of property, the court concluded that it established a different basis of assessment for farm machinery and equipment and therefore was unconstitutional. From the language of K.S.A. 1981 Supp. 79-343, it can be seen the legislative purpose here was not to reduce the tax burden on any given class of property owners, nor was the purpose to provide for a different basis of assessment for farm machinery and equipment. The purpose was merely to provide for what the legislature believed to be an acceptable and reasonable mode of assessment or method of determining fair market value.

Nowhere in the legislative enactment under consideration is the director of property valuation or the *county appraiser* instructed to ignore the provisions of K.S.A. 79-503 or any other statute made incumbent upon them by the legislature in making a determination of fair market value for purposes of ad valorem taxation. In fact, the director of property valuation is specifically enjoined to *utilize* the "initial value" to prepare the personal property guides "under the provisions of K.S.A. 75-5105a" in

subparagraph (*a*)(3) above. In K.S.A. 79-503 the taxing officials are given the general definition of fair market value and told by the legislature:

"Sales in and of themselves shall not be the sole criteria of fair market value *but shall be used in connection with cost, income and such other factors as may be appropriate including but not by way of exclusion:*

"(a) The proper classification of lands and improvements;

"(b) the size thereof;

"(c) *the effect of location on value;*

"(d) *depreciation, including physical deterioration or functional, economic or social obsolescence;*

"(e) *cost of reproduction* or improvements;

"(f) productivity;

"(g) earning capacity as indicated by lease price or by capitalization of net income;

"(h) *rental or reasonable rental values;*

"(i) *sales value on open market with due allowance to abnormal inflationary factors influencing such values;* and

"(j) *comparison with value of other property of known or recognized value. The ratio study shall not be used as an appraisal for appraisal purposes."* (Emphasis added.)

All statutes relating to any given subject matter must be read *in pari materia;* that is, each statute must be read in light of other statutes dealing with the same subject matter, and each must be interpreted, if possible, in such a fashion as to be consistent with those other statutes.

In K.S.A. 79-503 the *appraiser* is directed to *utilize* those factors enumerated *which are applicable in determining fair market value,* but those factors are *"not by way of exclusion."* Here, in K.S.A. 1981 Supp. 79-343 the legislature added *another factor to be utilized* — the average loan value. Clearly, this is an *appropriate other factor* authorized by K.S.A. 79-503 and its addition was within the legislative domain. No evidence has been presented by the petitioner that *utilization* of average loan value on farm machinery and equipment as a factor to consider will lead to an improper determination of fair market value in money. The petitioner's position is simply that the 1981 enactment under consideration is unconstitutional per se.

Throughout K.S.A. 1981 Supp. 79-343 is the legislative theme that the average loan value of farm machinery and equipment *shall be utilized* in devising and prescribing the personal property guides for farm machinery and equipment by the director of property valuation which are to be furnished to the counties *for*

*use in valuing such property for taxation.* The statute does not direct that the values determined in accordance with part (1) and (2) of Section (a) be the sole or exclusive considerations made by the director in developing the personal property guides. In *Webster's Third New International Dictionary* (1961), "utilize" is defined as:

"To make useful; turn to profitable account or use."

It was the legislative intent that, in preparing the guides for assessment of farm machinery and equipment, the director make *use* of the figures derived by the method prescribed in the statute as a starting point in developing the guides. This interpretation is further substantiated because the legislature specifically refers to the average loan value ascertained by the director as the *initial value.*

Once the personal property valuation guides are forwarded to the county appraiser for use, the county appraiser is under a duty to "utilize" the guides in valuing farm machinery and equipment. The county appraiser is not bound simply to perform the ministerial or clerical function of assigning the figures in the published guides to various pieces of farm machinery and basing the tax assessments upon those figures. If any schedule published by the director of property valuation does not accurately reflect fair market value, the county appraiser is under a duty to deviate from that schedule and to value the property in accordance with the statutory criteria.

This court, in *Garvey Grain, Inc. v. McDonald,* 203 Kan. 1, 12-13, 453 P.2d 59 (1969), observed:

"[I]t would hardly seem necessary to state that if an assessment schedule failed to direct local taxing officials to consider and apply any pertinent statutory factors in determining justifiable value, the schedule would be erroneous as a matter of law. And if through adherence to that manifestly unlawful schedule, the evidence showed the assessor made a palpably excessive overvaluation of the property to be assessed, such act, although made in good faith, would be illegal and amount to constructive fraud or the equivalent of fraud on the rights of the taxpayer."

Absent evidence to the contrary, it must be presumed that public officials will follow the law. It therefore must be presumed that the director of property valuation will take into consideration all of the statutory factors applicable in determining the values to be published in the appraisal guide for farm machinery and equipment. This is consistent with the affidavit filed by the

respondent, the director of property valuation. It must also be presumed the county appraiser will take into consideration all of the statutory factors applicable in valuing farm machinery and equipment.

A legislative enactment providing a mode of assessment to establish fair market value is subject to attack as being invalid per se only if it can be shown that the method prescribed in such legislation cannot, as a matter of law, arrive at fair market value. This court has recognized many times that the legislature may exercise its sound discretion in establishing differing modes of assessments for different kinds of property. Such a legislative enactment will pass muster so long as the rate of taxation is equal, so long as the method of assessment and classification is reasonable and not arbitrary, and so long as the *basis* of assessment is equal. *Bank v. Geary County,* 102 Kan. 334, 170 Pac. 33 (1918); *Hunt v. Allen County,* 82 Kan. 824, 109 Pac. 106 (1910); *In re Page,* 60 Kan. 842, 58 Pac. 478 (1899); *Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234 (1877); *Francis, Treas., v. A.T. & S.F. Rld. Co.,* 19 Kan. 303 (1877); *Gulf Railroad Co. v. Morris,* 7 Kan. 210 (1871). The mere fact that there are differing modes of assessment, or modes of arriving at fair market value, does not render a statutory method void as contrary to Article 11, Section 1 of the Kansas Constitution, so long as the mode of assessment is reasonably calculated to arrive at fair market value.

There is nothing inherently wrong with the use of a depreciation schedule in determining the fair market value of property for taxation, unless it can be affirmatively shown that depreciated values are substantially different than fair market value.

Much of the personal property valued for tax purposes in the State of Kansas is valued on a depreciation schedule of one type or another. For example, the 1981 Kansas Appraisal Guide for Construction Equipment has on the inside cover sheet of that guide, the following paragraph:

"The County Assessors must adjust either up or down the valuation produced by applying the state guide, if in his judgment such an adjustment is necessary in order for him to comply with the statutory requirements of assessing said property at thirty per cent of its fair market value in money."

The introduction page contains the following statement as the fourth paragraph:

"For *equipment not listed* in the guide, it is necessary to secure the 'current model year retail selling price' and adjust with the following schedule:

EQUIPMENT NOT IN GUIDE

| Model Year | 1981 | 80 | 79 | 78 | 77 | 76 | 75 | 74 | 73 | 72 | 71 |
|------------|------|----|----|----|----|----|----|----|----|----|----|
| Percent Good | .80 | .65 | .60 | .55 | .50 | .45 | .40 | .35 | .30 | .25 | .20" |

Thus, a depreciated value method is used in determining the fair market value for purposes of ad valorem tax for construction equipment.

The use of a depreciation schedule in valuing other types of personal property in Kansas is not uncommon and is a generally accepted way of arriving at fair market value. Legislative acts are presumed to be constitutional, and the petitioner has the burden of proving them otherwise. See *State, ex rel., v. Fadely,* 180 Kan. 652, 308 P.2d 537 (1957); *Associated Rly. Equipment Owners v. Wilson,* 167 Kan. 608, 208 P.2d 604 (1949); *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P.2d 373 (1949). If there is any reasonable way to construe legislation in such a fashion that it is constitutionally valid, the court must adopt such a construction. See Syl. ¶ 1 in the court's opinion.

An analysis of the law applied in making a determination of the constitutionality of the statute in this case will reveal, in my opinion, an inconsistency with the determination of constitutionality in other similar tax statute cases. Within this term of the Supreme Court, the attorney general argued two quo warranto actions filed against the director of property valuation: *Martin II,* and *Martin III,* 230 Kan. 747, 641 P.2d 1011 (1982). In both of these quo warranto actions our court was called upon to construe the respective legislative enactments to determine whether they met the uniform and equal requirements of Article 11, Section 1 of the Kansas Constitution. In other words, the taxation of tangible personal property, here farm machinery and equipment (*Martin II*), and the taxation of oil and gas leases and properties (*Martin III*), does not fall within any of the allowable constitutional classifications or exemptions. Therefore, that taxation is subject to K.S.A. 79-101, which states:

"All property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed by this act."

K.S.A. 79-329 through 79-334 as amended set forth the various statutory provisions for listing, valuation and assessment of oil and gas leases and properties; 79-329 declares such leases and properties to be personal property; 79-501 provides for all real

property and tangible personal property to be appraised at fair market value; 79-503 defines fair market value while 79-1439 provides that all such property shall be appraised uniformly and equally at its fair market value in money as defined in 79-503 and assessed at 30% thereof. See *Martin III,* 230 Kan. at 754. K.S.A. 79-1412a sets forth the duty of the county appraiser to supervise the listing and assessment *annually* of all real estate and personal property in the county subject to taxation except state assessed property.

*Martin III* was presented to the court on a stipulation of facts, as was the case in *Martin II.* In *Martin III* the court confined its opinion to the facts stipulated; whereas, in *Martin II* the court went outside the record to muster evidence on its own. The court did not recite it was taking judicial notice of evidence outside the record because "nationally published guides or other trade sources" are not publications concerning which the court can take judicial notice. The court, however, cites a reference merely "for example" and then makes a finding in the following language:

"The average loan values shown throughout the guide are nearly 30% less than the average resale prices and about 15% less than the average 'as is' prices. It is readily apparent that the average loan value, while having some correlation with fair market value, is not the price 'a well informed buyer is justified in paying and a well informed seller is justified in accepting.' See K.S.A. 79-503." (*Martin II,* 230 Kan. at 767.)

In *Martin III* the court liberally construed the act and recognized the interpretation the director of property valuation placed on the act. In *Martin II* the court narrowly construed the act and made no mention of the director's affidavit or a similar statement made in his response to the petition.

*Martin III* indicates the extent to which the court will go in upholding legislation. Further illustration of the extent to which the court will go to uphold legislation in recognizing the authority of the legislature is *State ex rel. Tomasic v. Kansas City, Kansas Port Authority,* 230 Kan. 404, 636 P.2d 760 (1982). There the legislature gave certain taxpayers a complete exemption from ad valorem taxes covered under the same constitutional provision considered by the court in this case.

Consistency in application of rules of construction when the constitutional validity of a legislative enactment is under consideration would require holding K.S.A. 1981 Supp. 79-343 consti-

tutional and giving the ad valorem taxpayers in *Martin II* and *Martin III* equal treatment.

It is respectfully submitted K.S.A. 1981 Supp. 79-343 should be held constitutionally valid.